Guyers' Lessee *vs.* Smith & Thompson.

either upon the pleadings or prayers, the judgment will be affirmed.

*Judgment affirmed.*

(Decided October 31st 1864.)

BENJAMIN VAN CROSSEN GUYER AND JAMES GUYER'S LESSEE *vs.* GEORGE SMITH AND ISRAEL THOMPSON.

ALIEN DEVISEES OF FREEHOLD IN THE STATE TAKE AS PURCHASERS, AND HOLD FOR THE BENEFIT OF THE STATE: THEIR TITLE MAY BE DIVESTED BY INQUEST OF OFFICE FOUND, &c.—The illegitimate children of a citizen of the United States domiciled abroad, aliens, born and residing abroad, and devisees under the will of their said father of real estate in the State of Maryland, are considered in the law as purchasers, and their title is held not for their own benefit, but for the benefit of the State, and subject to be divested by the State upon an inquest of *office found*, or other notorious act equivalent thereto.

ESCHEAT PATENT—EQUIVALENT TO INQUEST OF OFFICE FOUND.—The issue of an *escheat patent* by the Commissioner of the Land Office, has the same effect as the ancient proceedings by *office found*, in divesting the title of an alien to freehold lands in this State.

ACT OF CONGRESS OF APRIL 14TH 1802, SEC. 4, FOR THE PROTECTION OF CHILDREN BORN OF CITIZENS OF THE UNITED STATES WHILE DOMICILED ABROAD.— The devisees, not born in lawful wedlock, and under our laws *nullius filii*, are not within the provisions of the Act of Congress of April 14th 1802, sec. 4, which declares—"that the children of persons who now are or have been citizens of the United States, shall, though born out of the limits and jurisdiction of the United States, be considered as citizens of the United States."

QUERE.—As to the right of an alien to maintain ejectment for freehold lands in this State.

APPEAL from the Circuit Court for Allegany County:

This was an action of *Ejectment* brought by the appellants against the appellees, on the 1st of October 1858,

for Lot No. 876, containing fifty acres of land. Plea *non cul.* No defence on warrant was taken, and no questions of location arise in the case. The facts of the case are fully stated in the opinion of this Court. The plaintiff's prayer and the fifth, sixth and seventh prayers of the defendants, upon which arise the questions involved in this appeal, are as follows:

*Plaintiffs' Prayer.*—"The plaintiffs, by their counsel, pray the Court to instruct the jury, that if they shall believe from the evidence in this cause. that the lot in controversy was awarded to Thomas Adams, and that the said Thomas Adams conveyed the said lot by the deed offered in evidence in the cause to John Guyer; and if they shall also believe from the evidence in the cause, that the said John Guyer was a citizen of the United States, residing at the time of his death in the Island of St. Bartholomew, and that he executed the will offered in evidence, in favor of the lessors of the plaintiff, if they shall believe that the lessors of the plaintiff are the identical persons named in said will of John Guyer, that then the plaintiffs are entitled to recover in this action, notwithstanding the patent now offered in evidence by the defendants."

*Defendants' 5th Prayer.*—The defendants, by their counsel, pray the Court to instruct the jury, that if they shall believe from the evidence in the cause, that Benjamin V. Guyer and James Guyer, the lessors of the plaintiff, were born, and have always resided, and now reside out of the jurisdiction and allegiance of the United States, and that the said lessors of the plaintiff are not of pure white blood, but of mixed or part of African or negro blood, and that they are subjects of and owe allegiance to the King of Sweden and Norway, that then the plaintiff cannot recover in this case, as against the *escheat patent,* and the title thereby granted, as offered in evidence on the part of the defendants; provided the jury shall further

believe that the land claimed by the plaintiff in this cause, is the same land embraced and included in and by the said *escheat patent.*

*Defendants' 6th Prayer.*—The defendants, by their counsel, pray the Court to instruct the jury, that the *escheat patent* for "Yamland," as offered in evidence by the defendants, is *prima facie* evidence of title, and that the land thereby patented was liable to *escheat.*

*Defendants' 7th Prayer.*—The defendants pray the Court to instruct the jury, that if they believe from the evidence that John Guyer died in the year 1841, seized in fee of the land claimed by the lessors of the plaintiff in this case, and that he, said John Guyer, left as his last will, the paper offered in evidence by the lessors of the plaintiff, and that the lessors of the plaintiff were born in the Island of St. Bartholomew, and were illegitimate children of the said John Guyer, and that they did owe and claim, and do now owe and claim allegiance to the King of Sweden and Norway; and that the said lessors, since the death of the said John Guyer, up to the 30th day of October, in the year eighteen hundred and sixty, never resided in the State of Maryland, that then said land was liable to *escheat* on said last mentioned day, and the patent offered in evidence by the defendants in this cause, conveyed a good title in law to the said defendant, George Smith of Alexander,—if the jury believe that the said patent covers the same land as that claimed in the plaintiffs' declaration; and that although said patent recites the death of John Guyer and without heirs, said *escheat* grant passes the title, if the said land was *escheatable* for any cause.

The Court, (PERRY, J.,) rejected the prayer of the plaintiff, and also the 1st, 2nd, 3rd and 4th of the defendants, and granted the 5th, 6th and 7th prayers of the defendants. The plaintiff excepted to the rejection of his prayer, and to the granting of the last three prayers of

the defendants, and the verdict and judgment being for the defendants, appealed.

The cause was argued before BARTOL, GOLDSBOROUGH, and COCHRAN, J.

*Thomas J. McKaig,* for the appellant.

1st. The plaintiff's prayer ought to have been granted, because the appellants under the will of their father took by purchase, and their title was good against all but the State, even if they were aliens by birth and residence, and they could only be ousted by the State, upon *"office found,"* and the *escheat patent* offered in evidence by the defendants, is not equivalent to *office found,* nor is it such a proceeding on the part of the State as will oust an alien purchaser of his title. *McCreery's Lessee vs. Allendor,* 4 *H. & McH.,* 409, 412. *Bradstreet vs. Supervisor, &c.,* 13 *Wend.,* 546, affirming the decision in 4 *H. & McH.* above. *Fairfax's Devisee vs ──── iter's Lessor,* 7 *Cranch,* 603. *Chirac vs. Chirac,* 2        259. *Craig vs. Leslie et al.,* 3 *Wheat.,* 563. *Crai*,        *vs. Bradford,* 3 *Wheat.,* 594. *Governeur's Heirs vs. Robertson et al.,* 11 *Wheat.,* 332. *Orr vs. Hodgson,* 4 *Wheat.,* 453. *Buchanan vs. Deshon,* 1 *H. & G.,* 289.

2nd. The defendants' sixth prayer ought not to have been granted, because although it may be conceded that an *escheat patent* is *prima facie* evidence, yet, after evidence given by the plaintiffs, such instruction was well calculated to mislead the jury. It is only *prima facie* evidence in the absence of other testimony. The proof of the will, that John Guyer did not die intestate, took from the patent its *prima facie* character; and to say to the jury that it was still *prima facie,* was to discredit the contrary testimony before the jury. It ought to have said, "it was *prima facie* evidence unless the jury shall

believe that John Guyer did not die intestate as to the property in dispute."

3rd. The defendants' seventh prayer ought not to have been granted:

1st. Because it admits the due execution of the will, and yet says that the *escheat patent* passed the title, and the *escheat patent* purports to be granted upon the representation by the defendants that "John Guyer died intestate and without heirs."

2nd. Because the *escheat patent* offered in evidence is not equivalent to "*office found.*"

The *escheat patent* was issued upon warrant authorized by sections 16, 17, 24, 25 and 26 of the 54th Article of the Code, providing for the issuing of *escheat* warrants where the party had died intestate and without heirs, and has no reference to titles vested by purchase in aliens defeasible by the State upon inquisition of *office found.*

The *escheat* warrant issues to any one who asks for it, and alleges that the owner died intestate and without heirs seized in fee simple.

By the rules of the Land Office, the proceedings against an alien are given in *Kelty's Landholders' Assistant,* based upon "an inquisition found," which gives the alien an opportunity of defence. *Landholders' Assistant, pages 172 to 182, inclusive. Jacobs' Law Dictionary, Title "Office Found." Fairfax's Devisee vs. Hunter's Lessee, 7 Cranch's Rep.,* 603.

3rd. Because the patent itself shows that no question of alienage was brought to the notice of the State or the officers of the Land Office, but professes to be issued because the owner died "seized in fee, intestate and without heirs," and those representations, as the record shows, were made after the testimony had been taken in this case, and the will of John Guyer was proved. It was therefore a fraud upon the plaintiffs and upon the State.

4th. The testimony shows that John Guyer, the father, was a native-born citizen of the United States, and that he died a citizen of the United States. The testimony proves that the lessors of the plaintiff were his children, born in the Island of St. Bartholomew. They are therefore not aliens, but are made citizens by the 4th section of the Act of Congress, passed April 14th 1802, which says, "And the children of persons who now are or have been citizens of the United States, shall, though born out of the limits and jurisdiction of the United States, be considered as citizens of the United States." *Young vs. Peck*, 21 *Wendell*, 389.

*O. Miller* and *Thomas Devecmon*, for the appellees, argued:

1st. That the *escheat patent* offered in evidence by the defendant is *prima facie* evidence of title, and that the land thereby patented was liable to escheat. And no evidence has been offered by the plaintiff to rebut that *prima facie* case. On the contrary, the evidence of the plaintiff is, that they are aliens, owing allegiance to a foreign government, and they only claim as devisees under the will of John Guyer. Now, though at common law an alien may take as devisee, he cannot hold for his own use. He holds only for the benefit of the State. The State can at any time seize the lands; they are liable at any moment to *escheat. Lee vs. Hoye*, 1 *Gill*, 188, 201. *Casey's Lessee vs. Inloes*, 1 *Gill*, 430, 488. *Hall vs. Gittings*, 2 *H. & J.*, 126. *Clements vs. Ruckle*, 9 *Gill*, 328. *Cook vs. Carroll*, 6 *Md. Rep.*, 304. *Fairfax's Devisee vs. Hunter's Lessee*, 7 *Cranch*, 620. 2 *Kent*, 61 *m.*, 23 *top*.

2nd. The practice of inquest of *office found*, has no application to our system of land law. The grant of an *escheat patent*, which is a judicial act of the Commissioner of the Land Office, where all parties have the right to

*caveat* and contest its issue, is equivalent to *office found* at common law, and in those States whose laws make special provision for such process. No such process is known to our law, and has never been acted on here. The practice here and the provisions of our Acts of Assembly, ignore altogether such a procedure. Act of 1799, ch. 79, sec. 7. *Landholders' Assistant*, 362, *et seq.* 3 *Jacobs' Law Dic.*, 454. *Duplessis vs. Att'y General*, 1 *Brown's Parl. Cases*, 415. *Hayne vs. Redfern*, 12 *East.*, 96. *Wilbur vs. Tobey*, 16 *Pick.*, 177. *Cook vs. Carroll*, 6 *Md. Rep.*, 104. *Buchanan vs. Deshon*, 1 *H. & G.*, 289. Act of 1779, ch. 6, sec. 2. Act of 1789, ch. 24. *Landholders' Assistant*, 364 *to* 366.

3rd. An alien, though he may at common law have capacity to take, he cannot hold lands, nor can he maintain a real action for the recovery of lands. *Calvin's case*, 7 *Coke*, 16. *Coke Litt.*, 129 *b.* 1 *Bac. Abr.*, *Tit. Alien D.* 1 *Comyn's Dig.*, *Tit. Alien C*, 5. 2 *Viner's Abr.*, *Tit. Alien G. H. Dyer's Rep.*, 2 *b.* *Ainnislie vs. Martin*, 9 *Mass.*, 460. *Fairfax's Devisee vs. Hunter's Lessee*, 7 *Cranch*, 620.

There can be no presumption in favor of the appellants that they intended to settle in Maryland because our laws expressly forbid it, they being nothing more nor less than free negroes.

4th. These plaintiffs are not only aliens, but are proved to be of African descent, and it is against the policy of our laws that such persons should hold real estate in Maryland, and the rule, therefore, that an alien cannot bring an action to recover this land, should be rigidly enforced against these parties. Act of 1831, ch. 281. *Monica vs. Mitchell*, 1 *Md. Ch. Dec.*, 355. *Wilson vs. Farquharson*, 5 *Md. Rep.*, 134. *Code, Art.* 66, *secs.* 14 *et seq.*

BARTOL, J., delivered the opinion of this Court.

This was an action of *Ejectment* brought by the appellants against the appellees on the 1st day of October 1858,

for Lot No. 876, containing fifty acres of land.   Plea *non cul.*   No questions of location arise in the case.   The plaintiff offered in evidence the award of the lot in question, under the Act of 1788, (November session,) to Thomas Adams, and a deed for the same from Adams to John Guyer, of the city of Annapolis, dated the thirtieth day of March 1792.   They then offered, by consent, evidence taken in the Island of St. Bartholomew.   From this evidence it appears that John Guyer died in the Island of St. Bartholomew on the 13th of March 1841, leaving a will, by which he devised all the residue of his property, real and personal, and wherever situated, to his two sons, Benjamin V. Guyer and James Guyer, (the lessors of the plaintiff,) who, as described in the will, "are also the children of Miss Margaret Richardson." The execution of the will was proved by the only witness examined, who also proved that John Guyer had resided in the Island of St. Bartholomew for more than forty years, engaged in mercantile pursuits, that the lessors of the plaintiff are natives and citizens of the Island, and owe allegiance to his Majesty, the King of Sweden and Norway; and that to the best of his belief their father and mother were not lawfully married, and that their mother is partly of African blood or descent.

The defendants then offered in evidence an *escheat patent* for this lot (No. 876,) under the name of "Yamland," issued to George Smith, of Alexander, dated the 28th of March 1862, and reciting that the warrant therefor was obtained on the 30th of October 1860.   The patent is in the usual form of *escheat patents* granted by the Land Office.   The questions presented by this appeal arise upon the plaintiffs' prayer, which was refused, and the 5th, 6th and 7th prayers of the defendants, which were granted.   The facts disclosed by the evidence, and upon which the prayers are based, show that John Guyer, the testator, was a citizen of the United States domiciled

abroad, and that his devisees, the lessors of the plaintiff, are his illegitimate children, and aliens, born and residing in the Island of St. Bartholomew. As they take by devise, they are considered in the law as purchasers; this is decided by the Supreme Court of the United States in *Fairfax's Devisee vs. Hunter's Lessee*, 6 *Cranch*, 603. Judge STORY delivering the opinion of the Court, page 619, says: "It is clear at the common law, that an alien can take lands by purchase, though not by descent, or in other words, he cannot take by the act of law; but he may by the act of the party," and after citing the authorities for this position, he continues: "Nor is there any distinction whether the purchase be by grant or devise. In either case the estate vests in the alien,— *Pow. on Dev.*, 316, &c. *Park Rep.*, 144. *Co. Litt.*, 26, not for his own benefit but for the benefit of the State, or in the language of the ancient law, the alien has the capacity to *take*, but not to *hold* lands, and they may be seized into the hands of the sovereign." See also the opinion of Mr. Justice JONSON in the same case, pages 628–630. The question whether an alien holding lands by purchase can maintain an action for their recovery, is also considered in the case cited. On page 620, Judge STORY says, "It seems indeed to have been held that an alien cannot maintain a real action for the recovery of lands. *Co .Litt.*, 129; *Thel. Dig. ch.* 6; *Dyer*, 26; but it does not then follow that he may not defend, in a real action, his title to the lands against all persons but the sovereign." And we may add that this doctrine of the common law seems to be supported by the authorities cited under the 3rd point in the appellee's brief. It is however contended by the appellants that the contrary has been decided in this State, by the cases of *McCreery's Lessee vs. Alexander* and *Same vs. Wilson*, 4 *H. & McH.*, 409 and 412. Those decisions were so construed by the Supreme Court of New York, in *Bradstreet vs. Super-*

*visors, &c.,* 13 *Wend.,* 546, and were treated as having been decided entirely upon common law principles. This does not appear to us entirely clear. The opinion of Chief Justice CHASE in the first case is very brief, and in the second no opinion is given. From an examination of the argument of Mr. Martin, it appears that one of the questions involved, was the effect of the British Treaty; and a reference to the treaty of 1794, Art. 9, will show its applicability to the cases then before the Court. But without dwelling upon this point, or deciding upon the right of an alien to maintain an action of *ejectment* for freehold lands in this State, it is very well established that his title is held not for his own benefit but for the benefit of the State, and subject to be divested by the State upon an inquest of *office found,* or other notorious act equivalent thereto. This is settled by the case of *Fairfax's Devisee vs. Hunter's Lessee,* above cited. And it only remains to inquire whether the grant of an *escheat patent* has that effect. In the valuable compilation by Mr. Kelty, *The Landholders' Assistant,* it is stated that the practice of *escheating* lands in Maryland without *office found,* prevailed before the end of the proprietary government; that this practice afterwards continued. And that the practice of proceeding upon inquisition of *office found* having fallen into disuse, was not afterwards resumed. See pages 175, 176, 177; see also 362, 366, 367, 371. Under the present organization of the Land Office, the grant of an *escheat patent* is the judicial act of the Commissioner, before whom all parties in interest have a right to appear, and by their *caveat,* to contest its issue, with the right of appeal from the decision; and we are of opinion that the issue of an *escheat patent* has the same effect as the ancient proceeding by *office found,* in divesting the title of an alien to freehold lands in this State. In the opinion of this Court, the claim of the appellants is not protected by the 4th section of the Act of Congress

passed April 14th 1802. That Act declares, "that the children of persons who are, or have been citizens of the United States, shall, though born out of the limits and jurisdiction of the United States, be considered as citizens of the United States." These appellants claim the benefit of that section, as the children of John Guyer, who was a citizen of the United States. But the proof shows that they were not born in lawful wedlock, they are therefore illegitimate; under our law *nullius filii*, and clearly therefore not within the provisions of the Act of 1802. It follows from the views above expressed, that there was no error in rejecting the first prayer of the appellants, and that the 5th, 6th and 7th prayers of the appellee were properly granted.

(Decided November 16th 1864.)

