## BANK OF MISSISSIPPI *v.* DUNCAN & MARSHALL.

1. **BANK.** *Rights of creditors and stockholders. Power of Legislature.*
   If, at the time of the passage of the act of February 10, 1860, which granted to the Bank of Mississippi the right to sue to collect "the debts and choses in action due to it," there was any thing due the bank, to which creditors and stockholders could maintain a claim in any of the courts of this State, it was within the power of the Legislature to revive the bank for the purpose of collecting its assets, to be distributed amongst such creditors and stockholders. But if the bank had ceased to exist by the limitation of time in its charter, and if by its extinction the rights of creditors and stockholders expired, it was not within the power of the Legislature to revive rights before extinguished, and authorize their enforcement.

2. **SAME.** *Its dissolution by limitation. Effect.*
   The High Court of Errors and Appeals settled the rule that banks in this State were subject to the operation of the common-law incidents to the dissolution of a corporation; and as a result of such rule, that court held that, upon the dissolution of a bank, all of its rights and liabilities became extinct, except such as might be saved by express statutory provisions. Under the operation of this rule, where a bank was dissolved in 1850, by the efflux of time or a limitation in its charter, neither the creditors nor stockholders of the bank had any rights at law or in equity after its dissolution.

3. **SAME.** *Dissolution by time. Rights of creditors and stockholders.*
   This court cannot concur in the opinions of the High Court of Errors and Appeals, by which the rule was established in this State that the rights in equity of the creditors and stockholders of a bank should become extinct upon its dissolution by efflux of time; but, the rule having been settled, it is

the duty of this court to apply it to a bank contemporary with those in respect to which the rule was announced.

4. SAME. *Dissolution thereof. Act of 1843.*
The act of 1843, which saved the rights of creditors after the dissolution of a bank, applied in express terms to banks against which any judgment of forfeiture should be rendered, and had no application to banks dissolved by limitation of time.

APPEAL from the Chancery Court of Washington County. Hon. W. G. PHELPS, Chancellor.

On the 13th of June, 1844, in a suit in chancery by Brown, Brothers & Co., Charles A. Lacoste was appointed receiver of the assets of the Bank of Mississippi. In a few days thereafter, Lacoste gave bond for the faithful discharge of his duties as receiver, took possession of the property of the bank, and entered upon the discharge of his duties as directed in the order of court appointing him. In 1855 the bill of complaint of Brown, Brothers & Co. was dismissed, but the cause was retained for the purpose of a settlement with the receiver. In December, 1856, Lacoste was ordered to pay and deliver into court, by the 20th of March, 1857, all the moneys, notes, bills of exchange, or other securities or choses in action, collected or received by him as such receiver. In response to this order, Lacoste filed a report, to which exceptions were taken and sustained. Afterwards, Lacoste removed from the State, and in November, 1859, the papers in the cause were referred to W. L. Nugent, as a special commissioner, to take and state an account with Lacoste as receiver. Nugent made his report as commissioner, charging Lacoste, as receiver, with $125,000, and notes, bonds, and other evidences of debt, amounting in value to $223,411. The report was confirmed, and the receiver was ordered to pay and deliver into court the money, notes, bonds, etc., charged against him.

On the 22d of February, 1860, a *scire facias* was issued in behalf of the Bank of Mississippi, defendant in the suit instituted by Brown, Brothers & Co., against Levin R. Marshall, and Stephen Duncan, two of the sureties on Lacoste's bond

as receiver.   The writ alleged that the conditions of the bond
had been broken by the failure of the receiver to comply with
the order of December, 1856, requiring him to pay and deliver
into court the money, notes, bonds, etc., collected or received
by him, and his failure to comply with the order requiring him
to pay and deliver into court the money, notes, bonds, etc.,
charged against him by the report of Nugent, the special com-
missioner.   And the writ required the defendants therein to
show cause by the 14th of May, 1860, why the court should
not assess damages against them to the extent of $300,000,
the penalty of the bond.   Marshall and Duncan demurred to
the *scire facias.·*   The demurrer was sustained by the Chancery
Court, but, upon appeal to this court, the decree sustaining
the demurrer was overruled.   The case on the demurrer is
reported in 52 Miss. 740.

After the reversal of the chancellor's decree on the demur-
rer, the defendants answered, and set up the defence that the
bank accepted an act of the Legislature passed on the 21st of
February, 1840, as an amendment of its charter, which amend-
ment operated to dissolve the bank at the expiration of ten
years from the passage of the amendatory act, and that by its
dissolution all of its corporate rights, powers, and privileges
became extinct.   It was shown in evidence that, at the time of
the issuance of the *scire facias*, A. F. Smith and J. L. Yer-
ger had become the holders of the entire stock of the bank,
and that the writ was issued at their instance and for their
benefit.   On the final hearing in the Chancery Court, the *scire
facias* was dismissed.   There are several legislative acts to be
considered in connection with this case, but their respective
bearings are sufficiently indicated in the opinion of the court.

*W. L. Nugent*, for the appellant.

1. There is no proof of the acceptance by the bank of the
act of February 21, 1840, in the mode pointed out in the act
itself.

2. Can the receiver, or his sureties, set up the alleged dis-
solution of the bank in bar of the recovery sought in this suit?

If so, assuming that the act of 1840 was accepted, the result would be that the corporation could be prevented from exercising its functions long enough to let it expire, its assets could be squandered, and its stockholders ruined without redress. This is abhorrent to natural justice, and is not the law. The pendency of the injunction from April, 1843, to December, 1856, as to the parties to this litigation and their privies, should be excepted out of the period of limitation fixed by the statute, and the defendants should be estopped from setting up the defence of dissolution. If this is done, the act of 1860, reviving the bank, affords all the power necessary for this proceeding. The act of 1843 expressly provided that the debtors of a bank should not be released by a judgment of forfeiture against it. A legal dissolution otherwise is the same, in effect, as by judgment of forfeiture. Was not this the law without the act of 1843? The old adjudications on this point were unjust, and without reason. See *Bacon* v. *Robertson*, 18 How. (U. S.) 482; Ang. & Ames on Corp., sect. 779 a; *Curran* v. *Arkansas*, 15 How. (U. S.) 304; *Lum* v. *Robertson*, 6 Wall. 277; *New Albany* v. *Burke*, 11 Wall. 96; *Burke* v. *Smith*, 16 Wall. 390; 17 Wall. 610; 16 Ind. 46, 469.

3. After the dissolution of money and trading corporations, the stockholders have the right in equity to use the corporate name for the collection of its assets; and clearly so, after an enabling act of the Legislature. *City of Louisville* v. *Bank of The United States*, 3 B. Mon. 142; *James* v. *Woodruff*, 2 Denio, 574; *Gilmer* v. *Bank*, 8 Ohio, 71; *State Bank* v. *The State*, 1 Blackf. 273; *Newton & Co.* v. *White*, 42 Ga. 148; Ang. & Ames on Corp. 78; 2 Mason, 43; 14 Mass. 58.

*Harris & George*, on the same side.

1. Was the case which the Chancery Court retained for the purpose of getting the assets out of the hands of the receiver, pending in 1850, when the time limited for winding up the bank had expired? We affirm that it was pending, within the meaning of the act of 1840, both as to the receiver and his sureties. The liability of the sureties was essentially involved

in the proceeding against the receiver. *Chapin* v. *James,* 1 Cent. L. J. 540.

2. Did the acceptance of the act of 1840 by the bank, supposing such acceptance, and the expiration of the time limited therein, extinguish the obligation of the receiver and his sureties on their bond? We affirm, on the admitted doctrines of the Chancery Court, that there could be no such effect.

3. Was the act of 1860, giving further time for the bank to collect its assets, valid? We affirm that it was, because, in equity, the debtors had acquired no right to resist payment, and the Legislature had the power to legislate so as to insure the due collection and distribution of the effects of an insolvent corporation, which was being wound up under its own scheme. 18 How. (U. S.) 480 ; Ang. & Ames on Corp. 823.

*W. L. Nugent* and *W. P. Harris,* of counsel for the appellant, argued the case orally.

*T. J. & F. A. R. Wharton,* for the appellees.

1. The proof shows clearly that the act of 1840 was accepted by the bank as an amendment of its charter.

2. The bank having accepted the act of 1840 as an amendment of its charter, was debarred by the provisions thereof from suing out the *scire facias* in this case. The bank had no power to institute a new suit after the 22d of February, 1850. The issuance of the *scire facias* was the commencement of a new suit. *Bank of Mississippi* v. *Duncan et al.,* 52 Miss. 740 ; *Simms* v. *Nash,* 1 How. 271 : *Curry* v. *The State,* 39 Miss. 511 ; *Bowen* v. *Bowen,* 45 Miss. 10.

3. The act of 1860 is wholly inoperative for any purpose connected with the prosecution or defence of this suit. The time limited by the act of 1840, in which the bank might commence suits, had expired before the passage of the act of 1860, which, it is claimed, gave the bank further time for suing. In such circumstances the Legislature had no power to extend the limitation.

*A. H. Handy,* on the same side.

1. It is shown by the evidence that the bank accepted the

provisions of the act of 1840, which put an end to all of its powers after the expiration of ten years, except as to the prosecution and defence of suits then pending. It cannot be pretended that the *scire facias* was pending at the end of ten years from the 22d of February, 1840. *Bank of Mississippi* v. *Duncan et al.*, 52 Miss. 740.

2. The act of 1860 could not give the bank the right to have the *scire facias* issued; for its right to sue was barred by the limitation in the amended charter of 1840, before the passage of the act of 1860. The latter act was unconstitutional, in attempting to restore rights extinguished and barred by limitation. Cooley on Const. Lim. 365. The bank was defunct in 1860, having had no directors or other officers in many years. It was not in the power of the Legislature to galvanize it into potential existence.

3. In order to enforce the claim set forth in the *scire facias*, in favor of the stockholders, two things were necessary to be averred and proved: (1) that the corporation had been dissolved; and (2) that all the debts of the bank had been paid. *Bacon* v. *Robertson*, 18 How. (U. S.) 480. But the *scire facias* sets forth no ground of relief except for the bank.

*T. J. Wharton* and *A. H. Handy*, of counsel for the appellees, argued the case orally.

CAMPBELL, J., delivered the opinion of the court.

The evidence justified the conclusion that the amendment of the charter of the bank by the act of February 21, 1840, was accepted by it as therein provided for. The testimony of Lacoste; the agreement of the district attorney, made in 1850, in the *quo warranto* suit pending in the Circuit Court of Washington County; the affidavit of A. F. Smith, made in that suit; and the allusions in the answer of Turnbull, president, and John G. Cocke, in evidence, satisfy us of the acceptance of the amendment mentioned. The circumstances relied on to show the contrary fail to have that effect. The *quo warranto* suit against the bank quite consists with the

fact of an acceptance of the amendment of the charter, and the attempt to surrender the charter under the general law of 1840, as indicated by the entry on the general docket of the Superior Court of Chancery, also consists with having accepted the amendment in 1840 ; for, notwithstanding such acceptance, the bank was liable to proceedings by *quo warranto*, and may have been anxious to surrender its charter. And the reference by Lacoste's last report to the attempt of the bank, through some of the directors, to accept the act on p. 19 of Laws of 1840, which page contains the provision for a voluntary surrender of its charter by any bank in this State, and the remark in the opinion of the High Court of Errors and Appeals, in reference to evidence of a surrender of the charter in accordance with the general law of 1840, harmonize with the acceptance by the bank, in 1840, of the amendment of its charter.

Having accepted the amendment of February 21, 1840 (Laws 1840, p. 63), all the " rights, powers, and privileges " of appellant " ceased and ended " on the twenty-first day of February, 1850, " except so far as to enable said corporation to prosecute or defend suits then pending and undetermined." Sect. 5 of said act.

The *scire facias* against the sureties on the bond of the receiver was not a suit pending and undetermined on the twenty-first day of February, 1850, but is a new suit, and the appellant had no capacity to institute it, unless it derived it from chap. 322 of Laws of 1859–60, approved February 10, 1860, p. 390 of Pamphlet Acts. *Bank of Mississippi* v. *Duncan*, 52 Miss. 740. That act granted to appellant the right to sue to collect " the debts and choses in action due to it," and if it was competent for the Legislature to confer the right, it existed when this suit was instituted. If, at the time of the passage of this act, there was any thing due to appellant to which creditors or stockholders could maintain a claim in any of the courts of this State, it was within the power of the Legislature to revive the bank for

the purpose of collecting its assets, with a view to their distribution among such creditors and stockholders.    But if the bank had ceased to exist by the limitation of time in its charter as amended, and if by its extinction the rights of creditors and stockholders expired, it was not within the power of the Legislature to revive rights before extinguished, and authorize their enforcement.    *Davis* v. *Minor*, 1 How. 183 ; *Hooker* v. *Hooker*, 10 Smed. & M. 599 ; *Stewart* v. *Davidson*, 10 Smed. & M. 351 ; Cooley's Const. Lim. 355.

It was firmly settled by the decisions of the High Court of Errors and Appeals of this State, that banks in this State were subject to the operation of the common-law incidents to the dissolution of a corporation, *i.e.*, the extinction of all its rights and liabilities, except in so far as changed by statute. *Commercial Bank* v. *Chambers et al.*, 8 Smed. & M. 9 ; *Coulter et al* v. *Robertson*, 24 Miss. 278.    And it was expressly declared that the rights of stockholders were not preserved by the act of July 26, 1843, but were left to their fate as at common law, which was to perish.    *Coulter et al* v. *Robertson*, 24 Miss. 278.

The injustice of the common-law rule, and its " hostility to the more enlightened spirit of the age," were urged upon the High Court of Errors and Appeals by counsel, who insisted that it was condemned by reason and the principles of modern and enlightened jurisprudence ; but the firm answer of the court was, that, except as modified by statute, the common-law rule on this subject was in full force and operation in this State. We have no hesitation to declare our full concurrence with the views of counsel on this point, and our dissent from the view of the High Court of Errors and Appeals announced in the case of *Coulter et al.* v. *Robertson*, 24 Miss. 278.

But the question is, Was it not well-settled law in this State, that the consequences visited by the common law upon the dissolution of a corporation were incident to the dissolution of banks in this State, except as otherwise expressly declared by statute ?    The affirmative of this question is indisputable ; and,

although it may be the true view that the rights of creditors and stockholders of appellant did exist, in equity, after dissolution of appellant by efflux of time, we are constrained by the adjudged cases in our reports to declare that neither creditors nor stockholders of appellant had any rights, at law or in equity, after the dissolution of appellant. It was expressly declared in *Coulter et al.* v. *Robertson*, 24 Miss. 278, that the rights of stockholders were left to their fate at common law, and that it was only by virtue of the act of 1843 that the rights of creditors did not also perish. It is manifest that the act of 1843 has no application to appellant, because it in terms related only to banks against which any judgment of forfeiture should be rendered, and had no application to such as should be dissolved by time, without any judgment. No statute applied to them, and the common law, in all its absurdity, applied to them, according to the decisions of the High Court of Errors and Appeals.

We regard the rule, authoritatively announced by the High Court of Errors and Appeals as applicable to banks contemporary with appellant, as obligatory on us in declaring the effect of the dissolution of appellant.

Decree affirmed.