ELMER E. DEMAREST, DEFENDANT IN ERROR, v. SPIRAL RIVETED TUBE CO., PLAINTIFF IN ERROR.

Submitted March 17, 1904—Decided June 13, 1904.

1. The members of a corporation aggregate cannot separately and individually give their consent in such a manner as to bind themselves as a collective body, nor can any corporate engagements be implied from the unsanctioned conduct or declarations of individual members.

2. A person, who is the president and treasurer of a corporation and the owner of nearly all its stock, and to whom, as president, is, according to the by-laws, confided "the general and active management of its business," is, nevertheless, not authorized to bind the corporation by a contract to pay a commission for the sale of his own stock.

3. Ordinarily, a party who is employed to procure a loan of money for another is entitled to be paid only in case he procures the loan.

---

On error to the Hudson Circuit.

Before GUMMERE, CHIEF JUSTICE, and Justices DIXON, GARRISON and SWAYZE.

For the plaintiff in error, *Charles W. Fuller* and *George T. Werts.*

For the defendant in error, *Elmer E. Demarest* and *William H. Speer.*

The opinion of the court was delivered by

DIXON, J. This suit was brought to recover a commission of five per cent. on $8,450 for selling one hundred shares of stock in the defendant corporation at $80 and five shares at $90 per share, and also a commission of one per cent. on $25,000 for trying to procure for the company the loan of that sum for a year.

With regard to the stock, it appeared at the trial that on October 12th, 1901, the entire stock of the company, being one thousand seven hundred and fifty shares of the par value of $100 a share, had been taken by John A. Wilbur, in consideration of real estate, machinery, fixtures, furniture, letters-patent, a contract and cash, valued by the board of directors at $175,000, and transferred by Wilbur to the company; that eight shares were to be issued at once to Wilbur and one share to each of two other persons, being the ten shares subscribed for at the formation of the company, and that the remaining one thousand seven hundred and forty shares were to be issued as ordered by Wilbur. During the same month of October Wilbur became the president and treasurer of the company, and as president had, under the by-laws, "the general and active management of the business."

The testimony further tended to prove that in February, 1902, Wilbur applied to the plaintiff, an attorney-at-law, to see if he could not sell stock for the company, and in consequence of this the plaintiff made some efforts toward that end, and one hundred and five shares were sold at the prices above stated. There were no meetings of the board of directors to act on the subject of selling stock, but in several casual interviews between the plaintiff and individual directors it appeared that they knew of his efforts. Certificates for the one hundred and five shares of stock sold were issued by the company to the purchasers and the prices appear on the company's books, but in what connection was not shown. On July 11th, 1902, the plaintiff received a check for $100, signed "Spiral Riveted Tube Co., John A. Wilbur, Treas.," and enclosed in a letter saying it was "in part payment for com-

missions due on sales of stock," which was signed "John A. Wilbur, Pres't S. R. T. Co."

On this evidence, the learned judge presiding in the Hudson Circuit charged the jury as follows: "If you find that these directors, or a substantial majority of them—four out of five—were cognizant of the fact that Mr. Demarest had been employed by Mr. Wilbur to give these names of possible purchasers of this stock, and that there was this five per cent. agreement, and they failed then to say to Mr. Demarest 'that is not the company's agreement,' then Mr. Demarest might be justified in assuming that the agreement had been ratified—that Mr. Wilbur had the necessary power. * * * The question is entirely whether, by representations of this board of directors, individually or collectively, Mr. Demarest was allowed to believe that Mr. Wilbur was authorized to make this contract, or was led to believe that they assented to his having made the contract in that way. * * * If they never held any meetings, naturally they could take no formal action; but they might still individually assent, in the way already described, so as to give the plaintiff a right to recover."

To this charge the defendant excepted, and the plaintiff having obtained a verdict and judgment, reversal is sought because of error therein.

From the circumstances mentioned it is clear that the sale of the stock was the concern, not of the corporation, but of Wilbur. An original issue of the stock by the corporation for cash at less than par would have been illegal, and the company had already made a legal contract to issue it for property at Wilbur's order, and had received the stipulated price. Manifestly, therefore, Wilbur had no power, either as president and treasurer of the corporation or as general manager of its business, to bind the company to pay for the sale of what was his own property. Nor did the fact that he owned almost all of the company's stock, although coupled with his official authority, entitle him to contract for the corporation outside of the course of its ordinary business. *Stokes v. New Jersey Pottery Co.*, 17 *Vroom* 237. The issuance of the certificates of stock by the company, and the entry of the

price of sale on its books, the purpose of the entry not appearing, do not in this case indicate any corporate interest in the sale. The check and letter signed by Wilbur add nothing to the force of the original arrangement made by him.

Hence the case turned on the charge quoted above, and the question now is, can individual directors of a corporation, by their words or their silence, ratify a bargain made by its president and general manager, nominally in its behalf, but actually without authority, and in a matter with which the company has no concern?

The answer to this query is furnished in direct terms by a standard text-book (*Ang. & A. Corp.*), as follows: "The members of a corporation aggregate cannot separately and individually give their consent in such a manner as to bind themselves as a collective body [section 232], neither can any corporate engagements be implied from the unsanctioned conduct or declarations of individual members [section 239]." This statement of the law is abundantly supported by judicial decisions. See, also, *Cook Corp.*, § 712.

The charge excepted to was erroneous.

With regard to the plaintiff's claim for trying to procure a loan, we think the trial judge should have confined the matter to the doctrine which in one part of his charge he clearly stated, viz., "ordinarily a party who is employed to procure a loan of money for another  *  *  *  is entitled only to be paid if he procures a loan." We find nothing in the evidence to free the plaintiff's claim from the application of this rule, and the jury should not have been instructed to allow the plaintiff "reasonable compensation" for his unsuccessful efforts.

The judgment should be reversed.