MALCOLM V. TYSON, Administrator of Morris Robinson, Deceased, et al., *vs.* GEORGE'S CREEK COAL & IRON COMPANY, a Body Corporate of the State of Maryland.

*Stock certificate; "agent"; presumption; burden of proof.*
*Limitations.   Equity.   Agency; death; revocation.*

When a stock certificate is issued and entered upon the books of the company to one as "agent", the agency is revoked by his death and the stock does not pass to his administrator.

p. 572

The word "agent" added to the name of a party to whom the stock certificate is issued is not merely *descriptio personæ,* but raises the presumption that the stock is held by the party for a principal and not in his own right.          p. 573

When a stock certificate has been issued to a party as agent, the burden of proof is not upon the corporation to prove who was the principal.                               p. 579

Where a stock certificate has been issued to one as agent, the mere lapse of time after the failure of the principal to appear, or to collect or claim the dividend, raises no presumption of personal ownership in the person designated on the certificate as agent.                                       p. 579

Whether a trust is subject to the statute of limitations depends upon the character and terms of the trust.          p. 579

A stock certificate was issued in 1838, and for 70 years was carried on the books of the Company in the name of "M. R., Agent".   The dividends were never collected nor the stock transferred; M. R. died shortly after the stock was so issued to him.   *Held,* that such entry of the stock on the books of the company served as a continuous assertion that the stock was not the property of M. R. in his own right, and as the

administrators of M. R. have failed to show by any evidence
that M. R. had repudiated the trust, limitations could not
apply; and it was further held that the stock did not form
part of the estate of M. R. nor pass to his administrators.

p. 581

*Decided April 26th, 1911.*

Appeal from the Circuit Court No. 2 of Baltimore City
(STOCKBRIDGE, J.).

The cause was argued before BOYD, C. J., BRISCOE,
PEARCE, PATTISON and URNER, JJ.

*Charles T. Reifsnider* and *Rufus W. Applegarth,* for the
appellant.

*Bernard Carter, for the appellee.*

PATTISON, J., delivered the opinion of the Court.

The stock ledger of the appellee, the George's Creek Coal
and Iron Company, contains, among others, two accounts:
one with "Morris Robinson, New York," and one with "Mor-
ris Robinson, Agent." The former account discloses that
there were issued to him in his individual capacity three
hundred and fifty four shares of the stock of the appellee
company. Of this number three hundred and thirty-one
were disposed of by Robinson and re-issued to those to whom
they had been assigned by him, leaving twenty-three shares
outstanding in his name. These were issued, as shown by the
account, eleven shares on October 12th, 1837, and twelve
shares on June 1st, 1838, the certificates therefor being num-
bered 27 and 88, respectively. The latter account discloses
that there were issued to him as *agent* three hundred and
fifty shares of stock. Of these shares two hundred and fifty
were acquired by him from John H. Alexander, at that
time the president of the appellee company, and issued to
him December 26th, 1837, and one hundred shares from

John Duer, vice-president of the American Life Insurance and Trust Company, issued to him September 8th, 1838. The account then discloses that two hundred and fifty shares, the number that he had acquired from John H. Alexander, were on September 14th, 1838, re-issued to John H. Alexander, leaving Robinson holding, as agent, only the one hundred shares that he had acquired from John Duer, the certificate for the same being numbered 616.

The record discloses that at the time of the issuance of this stock Morris Robinson was cashier of the New York Branch of the Bank of the United States, which position it seems he held for a number of years. He later became the first president of the Mutual Life Insurance Company of New York, and died in 1849. Letters of administration upon his estate were granted in New York and an inventory of his property filed, but in it no mention is made of his ownership of the stock of the appellee company above referred to.

No dividends were declared by the company upon its stock before the death of Morris Robinson; in fact, no dividends were declared thereon earlier than 1864 or thereabouts. From that time on dividends were declared at regular intervals until 1903, when they issued a stock dividend of 100 per cent. As the books of the company then showed that the twelve and eleven shares issued to Morris Robinson were still standing in his name, the twenty-three additional shares issued as a stock dividend upon said twelve and eleven shares, were accordingly issued to him in his individual capacity, the certificate therefor, No. 3628, being withheld by the company. And as the one hundred shares issued to Robinson as agent were still outsanding to him in that capacity, the one hundred additional shares issued as a stock dividend thereon were likewise issued to him as agent, the certificate therefor being numbered 3629, which was also withheld by the company. After the issuance of the stock dividend of 100 per cent. the company thereafter declared dividends not only upon the original stock issued to Robinson as individual and

as agent, but also upon the additional stock issued as stock dividends, and as there was no claimant for such dividends they were retained by the company, and consequently are still unpaid.

In 1909 letters of administration upon the personal estate of Morris Robinson in Maryland were granted to Malcolm V. Tyson, the appellant, who, as he testified, made diligent search for the three certificates, Nos. 27, 88 and 616, representing the stock issued to Morris Robinson in his individual capacity and as agent, and failing to find them, he caused a notice to be inserted in the *Baltimore Sun* giving notice of the loss or destruction of said certificates, and stating that application had been made to the company for the issuance of new certificates of stock in lieu thereof. This advertisement, it seems, brought no information as to the whereabouts of the certificates, whereupon the appellant, as administrator, made written request of the company to issue to him as administrator of Morris Robinson, deceased, new stock certificates in the place of those which were supposed to be lost or destroyed, and filed with the president of the company a statement of the circumstances of the loss or destruction of said certificates and of his ineffectual efforts to find them. Upon the company declining to issue new certificates in lieu of the old ones, the appellant, as administrator, filed his bill in this case, alleging the facts as we have stated them and asking the Court to require the company to issue new certificates of its stock unto him in lieu of those lost or destroyed, and to transfer unto him certificates Nos. 3628 and 3629, and to pay over unto him all accrued dividends that may have been earned upon said stock since the death of the said Morris Robinson.

To this bill the appellee answered, admitting the issuance of the stock to Robinson as and in the manner above stated, but requiring proof as to the fact that the decedent, of whom the appellant was administrator, was the Morris Robinson to whom the stock had been issued, as well as other

facts therein alleged that were not within its knowledge, and further answering, said:

"It appears by the stock ledger 'A' of the defendant, that there was outstanding on February 11th, 1857, certificate No. 616 for 100 shares of the capital stock of the defendant, dated September 8, 1838, in the name of Morris Robinson, 'Agent', and there is nothing on the stock ledger to show that said certificate has been transferred from the name of said 'Morris Robinson, Agent'. But the said defendant does not know whether the said 'Morris Robinson, Agent' died possessed of or entitled to the said certificate or any of the shares of stock for which the same was issued; or whether the said certificate still stood in the name of the said 'Morris Robinson, Agent', at the time of his death; and, therefore, the defendant does not admit that the said 'Morris Robinson, Agent', did die so possessed of or entitled to the said shares of stock or any part thereof, or that, at the time of his death, if he did die, the said certificate of stock stood in his name.

"That it is advised, and it so avers, that even if the said 'Morris Robinson, Agent', was still possessed of or entitled, at the time of his death (if he be dead) to the said certificate No. 616, for said 100 shares issued to him on the 8th of September, 1838, and even if the plaintiff was duly appointed by the Orphans' Court administrator of the personal estate of Morris Robinson, and that the said Morris Robinson is the 'Morris Robinson, New York', to whom was issued the above named certificate No. 27 for eleven shares, and certificate No. 88 for twelve shares of the capital stock of the defendant, nevertheless the plaintiff is not entitled, as such administrator, to any part of the one hundred shares for which said certificate No. 616 was issued by this defendant to 'Morris Robinson, Agent', because said stock did not belong to said Morris Robinson, in his individual capacity. Moreover, until the contrary appears, the presumption of law is that the said stock for which said certificate No. 616 was issued did not belong, when it

was so issued, to the said Morris Robinson in his individual capacity, but he held it as agent for some owner to whom it did belong; and that such ownership and agency respectively continued as long as the said certificate stood in the name of the said 'Morris Robinson, Agent', and if the said Morris Robinson is dead, his agency for the true owner of the said stock terminated at his death."

The answer further alleged that unpaid dividends had accrued to June 27th, 1909, upon the shares of stock represented by certificates Nos. 27, 88 and 3628, issued in the name of Morris Robinson, New York, to the amount of $7,066.75; and that unpaid dividends had accrued to June 27, 1909, upon the shares of stock represented by certificates Nos. 616 and 3629, issued in the name of Morris Robinson, Agent, to the amount of $30,725, and that the stock dividends represented by certificates Nos. 3628 and 3629, had never been delivered to any person or corporation and are still in the possession of the defendant company.

The answer further alleges that at the time of the filing of the answer, with the exception of said stock ledger, there was in the possession of the defendant no other book of any kind prior in date to the Baltimore fire, which took place in 1904, relating to the issue or ownership of the above mentioned capital stock, either that issued to Morris Robinson, *New York,* or to Morris Robinson, *Agent,* the stock certificate book and other books relating to said stock and its ownership having been destroyed by said fire.

To this answer the general replication was filed, and the learned Court below, JUDGE STOCKBRIDGE, after hearing the evidence upon the issues joined and finding thereon that the shares of stock represented by certificates Nos. 27, 88 and 3628, issued by the appellee company to Morris Robinson, had devolved upon the administrator of the personal estate of Morris Robinson, deceased, and that certificates Nos. 27 and 88 had been lost, decreed:

1st. That the appellee company should issue to the appellant, in his name as administrator of Morris Robinson, deceased, a certificate for twenty-three shares, to represent the said eleven and twelve shares so lost as aforesaid, and also decreed that the administrator be allowed to transfer unto himself as administrator the twenty-three shares so issued as a stock dividend.

2nd. "And it appearing by the proceedings in this case, that none of the dividends heretofore declared by the defendant on, or in respect of, the above-mentioned eleven, twelve and twenty-three shares of said stock, have been by said defendant paid to any one, and that the total amount of said dividends declared on said stock up to and including June 27, 1909, being dividends from dividend No. 1 to dividend No. 81, inclusive, is seven thousand and sixty-six and 75/100 ($7,066.75) dollars, it is further adjudged, ordered and decreed, that the said plaintiff is entitled to receive from the defendant, and the defendant shall forthwith pay to the plaintiff the said sum of seven thousand and sixty-six and 75/100 dollars ($7,066.75), and the defendant shall pay to the plaintiff all dividends, if any, declared in respect of the above-mentioned shares of stock subsequently to June 27, 1909.

3rd. "And the Court being of opinion that there is no sufficient evidence in the case that the one hundred shares of the stock of the defendant company, now standing on its books in the name of Morris Robinson, Agent, and for which certificate No. 616, dated November 8, 1838, was issued in the name of Morris Robinson, Agent, ever belonged to or was the property of, the said Morris Robinson in his own right or in his individual capacity, and it appearing from the proceedings that the one hundred shares for which the certificate No. 3629 was made out in the name of Morris Robinson, Agent, in the year 1903, was declared as a stock dividend of 100% on the one hundred shares for which certificate No. 616, dated November 8th, 1838, was issued in the name of Morris Robinson, Agent, and now stands on

the books of the Company, and the Court being of the opinion that the plaintiff has no title to said two hundred shares of stock, it is further adjudged, ordered and decreed that the bill of complaint, so far as the plaintiff seeks thereby to recover said two hundred shares of stock and the dividends payable in respect thereof, be and the same is hereby dismissed."

It is from this order or decree dismissing the bill so far as it seeks to recover the two hundred shares of stock issued to Morris Robinson, agent, and the dividends payable in respect thereof that the administrator has appealed.

By the bill the Court is asked:

1st. To require the appellee company to issue unto the appellant, as administrator of Morris Robinson, deceased, the one hundred shares of stock represented by certificate No. 616 that were issued to Morris Robinson, *agent,* the original certificate having been lost.

2nd. That certificate No. 3629, representing the one hundred shares issued as a stock dividend upon the one hundred shares represented by certificate No. 616, to Morris Robinson, agent as aforesaid, be transferred to him as administrator of Morris Robinson, deceased; and,

3rd. That the unpaid dividends declared upon all the said two hundred shares of stock be paid over by the appellee company unto him as. such administrator.

Should we determine that he as administrator of Morris Robinson, deceased, is not entitled to have issued to him the one hundred shares of stock in lieu of the one hundred shares issued to Morris Robinson, agent, represented by the lost certificate No. 616, then it follows that the other relief asked for must be refused him, as his right to such relief is dependent thereon.

This demand made by the administrator that the stock be issued to him as such administrator in lieu of the stock issued to Morris Robinson, agent, can only be made upon the theory that said stock so issued Morris Robinson, agent, was his individual property at the time of his death. The inquiry

therefore is, was this stock the property of Morris Robinson at the time of his death, or was it the property of another for whom he held it as agent? If he held it as agent of another, such agency was revoked by the death of Morris Robinson, and it not being the property of the decedent, would not pass to his administrator. The stock, when issued, was issued to Robinson as agent, and the books of the company disclose no change in the character of such holding, nor is there any affirmative evidence found in the record that said stock ceased to be held by Robinson in the capacity of agent.

The transactions involving the sale and issuance of this stock occurred more than seventy years ago, and necessarily the evidence in relation thereto is meagre. All the parties who participated in such transactions have long since died, and by the great Baltimore fire of 1904 all the books of the company from which we could hope to acquire any information in relation to these transactions, with the exception of the stock ledger, were destroyed. While the stock was issued to him as agent, the record does not disclose the principal for whom he so held it as agent, nor has any one ever made claim to it as such principal.

It is contended by the appellant that the word "agent", following the name of Morris Robinson, is merely *descriptio personae,* and that no presumption arises therefrom that the stock was not his property or that it was the property of another for whom he was holding it as agent; the appellant contending that the word "agent" might have been added "for some private and undisclosed reason, probably to prevent its being attached under execution, as he may have thought." On the other hand, it is contended by the appellee that as the stock stood in the name of Morris Robinson, agent, the *prima facie* presumption is that he did not hold the stock in his own right and as his own property, but that he held it on behalf of some principal, and that to entitle his estate to this stock the burden of proof is upon the administrator to show that he, Morris Robinson, did not hold the

stock at the time of his death as agent for a principal, but held it as his own individual property.

This Court in the case of the *Third National Bank of Baltimore* v. *Lange et al.,* 51 Md. 144, in quoting approvingly from the decision of the Supreme Court of Masachusetts in the case of *Shaw* v. *Spencer and others,* in which stock certificates outstanding in the name of E. Carter, trustee, were pledged by the holder as collateral for certain acceptances and endorsed by him, and in which one of the questions presented was whether the word *trustee* was sufficient to put the holders upon inquiry and thereby effect them with notice of the trust, said: "The rules of law are presumed to be known by all men; and they must govern themselves accordingly. The law holds that the insertion of the word "trustee" after the name of a stockholder does indicate and give notice of a trust. No one is at liberty to disregard such notice and to abstain from inquiry, for the reason that a trust is frequently simulated or pretended when it really does not exist. The whole force of this offer of evidence is addressed to the question whether the word "trustee" alone has any significance and does amount to notice of the existence of a trust. But this has heretofore been decided, and is no longer any open question in this commonwealth." See also the cases of *Marbury, Trustee,* v. *Ehlen and others,* 72 Md. 206; *Swift* v. *Williams and Moore, Trustees,* 68 Md. 255.

Reasoning from the principles laid down in these cases, it would seem clear that the word "agent" added to the name of the party to whom the certificates are issued is not merely *descriptio personæ,* but its use raises the presumption that the stock was held by him as agent for a principal, and not held by him in his own right.

The *prima facie* presumption that this stock was held by Morris Robinson not in his own right but as agent holding it for another, is supported by the facts disclosed by the accounts appearing upon the stock ledger of the appellee company. As has been stated, there are two accounts upon the ledger, one in the name of "Morris Robinson, New York,"

and the other "Morris Robinson, Agent"; the first appearing upon page nine and the latter upon page twenty-five. The first account was opened March 4th, 1837, as shown by the first item therein contained, by which he is credited with one share of stock acquired from Macauley, and on January 29, 1841, he is charged with assigning or disposing of two hundred shares to Isaac Lawrence. The account was balanced on January 31, 1857, showing a balance of twenty-three shares standing in the namme of "Morris Robinson, New York". The account of Morris Robinson, *agent,* was opened on December 26, 1837, the first item therein being a credit to him as such agent of two hundred and fifty shares acquired from John H. Alexander. The last item therein is of September 14, 1838, whereby he is charged with the disposition of two hundred and fifty shares to John H. Alexander. This account, too, was balanced January 31, 1857, showing the number of shares outstanding in the name of Morris Robinson, *agent,* to be one hundred. It will therefore be seen that these accounts were running along at the same time. The certificates of stock issued to him in his individual capacity were dated October 12th, 1837, and June 11th, 1838, while it is shown by the ledger that the two hundred and fifty shares acquired from John H. Alexander and the one hundred shares from John Duer, vice-president, were issued to Morris Robinson, *agent,* on December 26, 1837, and September 8, 1838, respectively. The order, therefore, of the issuance of such stock to him being: October 12, 1837, 11 shares to Morris Robinson; December 26, 1837, 250 shares to Morris Robinson, *agent;* June 11, 1838, 12 shares to Morris Robinson; September 8, 1838, 100 shares to Morris Robinson, *agent.*

It is shown by a copy of letter appearing in the record from Richard Wilson, treasurer of the company, to Morris Robinson, dated September 8, 1838, that the one hundred shares of stock acquired from Duer, vice-president, were issued to Morris Robinson, agent, upon his direction and so entered on the account of Morris Robinson, *agent.* Why

should there have been two accounts, one with Morris Robinson, *New York,* and the other with Morris Robinson, *agent,* if the stock shown thereby to have been issued was to be held by him in the same capacity, that is, was to be held by him in his own right? Why should it have been issued to Morris Robinson, *agent,* upon his own direction, if there was to be no difference in the character of the holding of the stock so issued as agent, and the stock issued to him as Morris Robinson? The only answer thereto is that there was, at that time, a difference in the character of the holdings, and that it was so intended by him. In one case he held it in his own right, and in the other he held it in the right of another, although the principal is not disclosed.

The only other evidence throwing any light upon these transactions is that found in copies of certain letters from John H. Alexander, at that time the president of the appellee company, and Richard Wilson, at that time its treasurer, and one Macauley, a stockholder and agent employed, as it seems, for the sale of the company's stock, to Morris Robinson, and letters from Morris Robinson to them, written at the time of these transactions and in relation thereto. Some of these copies of letters were made by the president of the appellee company fifteen or sixteen years ago from the letters then in his possession, but which have since been destroyed by the fire of 1904, and which copies were placed in the hands of the counsel for the administrator, while other copies were found in the possession of certain of the heirs of Morris Robinson, deceased.

From these letters we are enabled to gather some information concerning the relation existing between Morris Robinson and the appellee company and its officials. This company, incorporated by the General Assembly of Maryland at its session of 1836, was at the time of the issuance of this stock in its infancy, and was in need of money with which to develop its property and operate its mines. Mr. Robinson at this time was the cashier of the New York branch of the great financial institution, the Bank of the United States,

and was thereby in a position to render to them great financial assistance. Those interested in the appellee company succeeded in interesting Mr. Robinson in their undertakings in connection therewith. He not only became a stockholder of the company, but, as shown by the correspondence referred to, he largely aided its officials in financing its needs. His advice was also often sought and given in connection with its business management. So early as February, 1838, we find in a letter from Richard Wilson, the treasurer of the company, to him, in which was enclosed a draft for $9,275.00, "being the proceeds for certificates for $10,000", a request that he make "no further negotiations at present with respect to the remaining $10,000, as we prefer to wait until about the first of May, when I will address you on the subject."

These letters further disclose that upon the sale by Macauley in Europe of four thousand shares of the stock of the company, the money received therefor, amounting to fifty-eight thousand pounds in gold, was remitted to this country in two sailing vessels, arriving here at different times. The bills of lading were to the order of Richard Wilson, treasurer of the George's Creek Coal and Iron Company. Upon the arrival here of the bills of lading they were endorsed and sent to Morris Robinson at New York, in letters written by the president and treasurer of said compnay, in which letters Mr. Robinson was directed to dispose of the gold, and the disposition of the same was left to his good judgment, and in the letter of Mr. Alexander he refers to the fact that Mr. Robinson had mentioned to him that perhaps the United States Bank would take the whole amount. Later more gold was sent from Europe to the company, and this, too, was sent to Mr. Robinson and disposed of by him, the disposition of it being left to his judgment.

The letters also disclose that in order to make the sale of the four thousand shares of stock that were sold by Macauley in Europe it was necessary to have the holders of the stock here surrender thirteen hundred shares of their holdings. It was therefore agreed by and among them that they

contribute this number of shares in proportion to their hold-
ings, and with the understanding that in the surrender
thereoof they were entitled to have returned to them out of
the proceeds of sale thereof the excess over what was agreed
upon as needed by the company, but the company refused to
pay over any part of such excess to the contributing stock-
holders until the whole thirteen hundred shares of stock had
been transferred.   The transfers were made without any
apparent difficulty or trouble, with the exception of those to
be made by Patrick Macauley and J. Watson Webb, both of
whom lived in New York.   It was in relation to these trans-
fers that the services of Morris Robinson were sought and
obtained.

The stock of both Macauley and J. Watson Webb had been
pledged to the American Life Insurance and Trust Com-
pany of New York, and was therefore in its possession at
such time, and would not be surrendered by them unless some
arrangement was made with the insurance company for its
release; and this arrangement and other matters in connec-
tion therewith, it seems, were committed to the care and
attention of Morris Robinson and Richard Wilson, who were
to co-operate in their efforts to accomplish this result.   Webb
was the owner of one hundred and seventy shares, all of
which had been pledged to the said insurance and trust com-
pany to secure an indebtedness of fifteen hundred dollars,
and he was to contribute to the thirteen hundred shares,
twenty-seven shares, the same being his proportionate part
of such number of shares.   It was necessary to obtain the
release of at least twenty-seven shares of the number so
pledged.

The consent of the company was obtained, and certificates
Nos. 38 and 39, for eighty-five shares each, were turned over
to Morris Robinson, who, by letter of August 17, 1838, sent
them to Wilson with direction to issue the one hundred and
forty-three remaining shares to John Duer, vice-president
of the said insurance and trust company.   The one hundred

and forty-three shares were so issued by the company and the certificates returned to Robinson.

Later, on September 8, 1838, Wilson wrote Robinson as follows:

"I received your letter of yesterday (September 7th) enclosing certificates for 143 shares G. C. C. & I. Co. stock in name of Mr. Duer, and I now enclose in place of it, agreeably to your directions, certificates: No. 616 for 100 shrs. name of Morris Robinson, Agent; No. 617 for 43 shrs. name of Mr. Duer, Vice-President A. L. In. & Tr. Co."

The letter of Robinson to Wilson September 7th, to which Wilson's letter of September 8th is an answer, is not in the record, nor have we any evidence as to its contents further than can be gathered from the answer of Wilson thereto. From this letter it can be seen that the stock was issued as directed by the letter of Robinson, one hundred shares of the same issued to Morris Robinson, *agent.*

We have stated quite fully the contents of these letters for the purpose of showing, as far as can be gathered from them, the relations existing between the company and Robinson, also for the purpose of showing the extent of evidence offered by the plaintiff to rebut the presumption that the stock was held by Robinson as agent for another, and not held by him in his own right. It is shown by these letters that in some of the transactions of the company he was acting for and on its behalf, and in this connection it will be recalled that the account with him as agent, on the stock ledger, discloses that on December 26, 1837, the two hundred and fifty shares of stock acquired from John H. Alexander, president of the company, were issued to Morris Robinson, *agent,* whether as agent of the company or for whom it is not disclosed, but we find that so early thereafter as September 14, 1838, it was surrendered and re-issued to John H. Alexander, president of the company.

The stock ledger further discloses that on January 31, 1857, after the death of Robinson and while John H. Alex-

ander, the president of the company, was still living, and possibly while Wilson was living although this is not clear from the record, the testimony being that he died in the fifties, the stock was then recognized as outstanding in the name of Robinson as *agent.* While the testimony may fail to disclose the principal, a burden not placed upon the appellee company, it, nevertheless, utterly fails to overcome the presumption that this stock was held by him as agent for another as principal, or that it was not held by him in his own right.

It is contended, however, on the part of the appellant that the presumption of his not holding the stock in his own right is overcome by the failure of the principal, in the great length of time that has elapsed, to appear and claim it as his own, he contending that by reason of such failure the property should now · be recognized and treated as having been the property of the decedent, Morris Robinson, at the time of his death, and that it, as his property should pass into the hands of his administrator. We can not adopt this contention, for we do not think their failure to appear, under all the facts and circumstances of this case, can overcome the presumption of ownership of the stock in another, and if the property was not the property of Robinson at the time of his death, the principal's failure to appear could not operate so as to vest the same in him.

It is further contended by the appellant that should the principal, by any appropriate proceeding, assert his or its claim or right, as such, to said stock now outstanding in the name of Morris Robinson, agent, such proceeding would be barred by the Statute of Limitations, and although the stock might originally have been held by Morris Robinson as agent of another, that as a result of such bar the stock, so issued to him as agent, became his individual and absolute property. Whether a trust is subject to the Statute of Limitations is to say the least largely dependent upon the character and terms of the trust. In this case we have not before us the agreement or facts upon which the trust or agency was

created, showing the exact relations existing between .the principal and agent, to aid us in characterizing the trust or agency and in determining whether or not it is subject to the Statute of Limitations.

In the case of *Cone* v. *Dunham,* 59 . Cal. 145, cited in the brief of the appellant in support of his contention, Averill, the plaintiff's testator bought of one Dunham eight shares of the stock of the Aetna Life Insurance Company, and to conceal his interest in the stock it remained in the name of Dunham on the books of the company down to the time of his death. The purchase was made in August, 1850. After the refusal of the executors of Dunham to comply with the demands made in March, 1885, by the executors of Averill to issue to them the stock to which they alleged they were entitled under the sale to Averill, the suit was instituted, which resulted in the lower Court rendering a judgment against the defendant, ordering them to deliver and transfer to the plaintiffs the stock in controversy, and all dividends thereon received by the defendants or their testator. The Supreme Court of California in discussing that case, said: "Here the trust is created by the transactions between the trustee and the *cestui que trust.* Mr. Dunham owned twenty-one shares of stock. Of this Mr. Averill purchased eight shares, which, for reasons of his own, he did not want transferred to himself, but did want them to remain standing in the name of Mr. Dunham and ostensibly his. Hence arose the necessity of the writing of August 14, 1850. The writing was in the nature of a receipt to furnish evidence, not only of the payment of the eighty dollars (the cash payment made thereon) but also that, of the twenty-one shares of the stock standing in Mr. Dunham's name, Mr. Averill was the owner of eight, having paid eighty dollars therefor and become responsible for the balance of the installments when called in. It contained no agreement as to the future disposition of the stock of the dividends therefrom; that was left where the law left it."

In that case the Court held that from the nature or character of the trust it was subject to the Statute of Limitations and that from the facts disclosed therein the plaintiff's claim was barred by the statute.  That case however is very unlike the case before us in many respects.  In this case the stock was not issued in the name of Robinson in his own right, as in that case, but issued to him as agent, carrying with it, as we have said, the presumption that the ownership of the stock was in another and not in him.  It was so entered upon the books of the company and so remains to this day unchanged, serving as a continuous assertion that the stock was not the property of Robinson in his own name, but held by him in the name of another.  Here there were no acts of Robinson that could be regarded as a repudiation of the trust; no dividends were ever collected by him and therefor no refusal or neglect on his part to pay over the same.  In that case dividends were regularly collected by Dunham and withheld by him.

We can not from the facts and circumstances before us in this case adopt the contention of the appellant and say that such a proceeding as above mentioned would be barred by the Statute of Limitations.

From what we have said we find no error in the ruling of the Court below, and we will therefore affirm its decree.

*Decree affirmed, with costs to the appellee.*