GEORGE B. PEABODY, ET. AL., TRUSTEES,

*vs.*

THE GEORGE'S CREEK COAL AND IRON CO.

*Stock: name of agent with undisclosed principal.   Bill
in equity and exhibits.*

Certain shares of stock that stood for over seventy years upon
the books of the corporation in the name of one C. R., *Agent;*
there was no evidence as to who was the principal; the cer-
tificate itself could not be found and C. R. had never col-
lected any dividends, although the stock for many years had
been paying dividends; on a bill by certain parties for a
mandatory injunction to compel the corporation to issue to
them a new certificate for such stock and to account for the
dividends, etc., it was *held,* that the evidence offered by them
to show such title in the one under whom they claimed the
stock, that they could through him claim the property in
themselves, was not sufficient to entitle them to the order.

p. 670

The general presumption, that things once proved to have ex-
isted in a particular state are understood as continuing in
that state until the contrary is established, was *held* not to be
applicable to this case.                              pp. 666-67

Exhibits are filed with a bill that they may assist in the
presentation of its objects and purposes, and therefore a bill
and its exhibits are to be read and construed together.  p. 666

· *Decided May 13th per curiam; opinion filed, June 24th,
1913.*

Appeal from the Circuit Court No. 2 of Baltimore City, (STUMP, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS and PATTISON.

*Joseph C. France* and *Leigh Bonsal* (with whom was *Rufus W. Applegarth* and *Charles T. Reifsneider*) on the brief), for the appellants.

*Shirley Carter* for the appellees.

PATTISON, J., delivered the opinion of the Court.

The subject of this appeal is two hundred shares of the stock of the George's Creek Coal & Iron Company issued to Morris Robinson, Agent, with certain accumulated dividends. One hundred of these shares, evidenced by certificate No. 616, were issued on September 8, 1838, and the remaining one hundred shares were issued as a stock dividend thereon in 1903, the certificate therefore being No. 3629. This certificate was not then, nor has it since been delivered to anyone. The original certificate was delivered, but its whereabouts are unknown. For many years, until 1864, after the death of Morris Robinson, no dividends were paid by the Company upon its stock. Thereafter dividends were regularly paid. The dividends payable upon the stock issued in the name of Morris Robinson, Agent, have never been paid to anyone, but have been allowed to accumulate in the hands of the company and are still held by it, until now the value of the two hundred shares of stock, together with the accumulated dividends, is approximately seventy thousand dollars ($70,000.00).

In the case of *Tyson* v. *George's Creek Coal & Iron Company,* 115 Md. 564, this stock and the accumulated dividends are claimed by Malcolm V. Tyson as adminis-

trator of Morris Robinson, his contention being that it was the individual property of Morris Robinson and that he as his administrator was entitled thereto, but this Court refused to adopt his contention, and affirmed the ruling of the lower Court in its refusal to direct the defendant company to issue to him as administrator a new certificate in lieu of certificate No. 616, which was therein alleged to have been lost or destroyed, and to transfer unto him certificate No. 3629, issued for the additional stock, and to pay over unto him the aforesaid accrued dividends, as prayed in his bill.

In this case the appellants claim ownership of the above mentioned stock and the accrued dividends, and in the prayer of their bill, filed in the Circuit Court No. 2 of Baltimore City, they ask for a mandatory injunction requiring or directing the defendant corporation, (a) to issue a new certificate unto them in lieu of the alleged lost certificate No. 616; (b) to transfer unto them certificate No. 3629; and (c) to pay over unto them all accrued dividends that may have been earned upon said stock, etc.

In their bill they allege that their uncle George Peabody, a native of Massachusetts, a banker engaged in business both in London and the United States, a few months before his death, on September 28, 1869, executed a deed of trust to George Peabody Russell, Robert Singleton Peabody, and Charles W. Chandler, Trustees, assigning and conveying to them, for the purposes therein stated, the property therein mentioned. This deed contained a provision for the substitution of other trustees in the event of vacancies occuring by reason of death or resignation, and in accordance therewith the appellants Charles B. Peabody and Henry C. Little were elected as successors to Robert Singleton Peabody and Charles W. Chandler, both deceased, while no successor to George Peabody Russell, now deceased, has been named. In naming the property therein assigned or conveyed as aforesaid, we find in paragraph seven of the said deed of trust, a copy of which para-

graph is filed as an exhibit with the bill, this language; "All my right, title and interest in and to the assets of the Bank of the United States, conveyed to me by deed of Samuel Jauden and others, dated June 25, 1867."

The bill alleges that it with the exhibits filed show that in the assets of the bank so assigned unto him, and for which he paid the sum of one hundred thousand dollars, are included the one hundred shares of the stock of the defendant company which had originally come into the bank's possession on May 23, 1839, (if not before) as collateral for a loan of $3090. made to James Watson Webb. This stock, as the bill alleges, was issued on September 8, 1838, by the defendant Company in the name of Morris Robinson, Agent, and the certificate therefor was No. 616; that these one hundred shares had been part of one hundred and seventy shares which had originally been issued on July 3, 1837, to James Watson Webb and which had been placed as collateral by said Webb with the American Life Insurance and Trust Company for a loan of $1500., and that on August 18, 1838, twenty-seven shares of said one hundred and seventy shares had been delivered to Patrick McCauley for certain English shareholders, and the remaining one hundred and forty-three shares had been put in the name of John Duer, Vice-President of the American Life Insurance and Trust Company, to secure the said indebtedness to the insurance company. That subsequently, on September 7, 1838, upon a reduction of said indebtedness to the insurance company, the one certificate for one hundred and forty-three shares was changed to two certificates, one for forty-three shares, issued in the name of John Duer, Vice-President of the said insurance company, and the other for one hundred shares issued in the name of Morris Robinson, Agent, and the bill alleges that the said one hundred shares so issued to Robinson as agent were never thereafter transferred upon the books of the defendant company, but were, as the bill states, deposited with the Bank of the United States as

collateral for the loan of $3090 made to James Watson Webb.

As alleged in the bill and shown by the exhibits filed therewith, the Bank of the United States in 1841 made three deeds of assignment for the benefit of its creditors; the first on May 1st, to Dundas and others, trustees; the second on June 7th, to John Bacon and others, trustees, and the third on September 4th and 6th, to James Robertson and others, trustees. The last mentioned deed assigned all assets not assigned by the other two deeds, and also all assets that might remain in the hands of the trustees in the other two deeds after they had performed the trusts created by said deeds.

In the first of these deeds, as the bill alleges, no mention is made of either the note of Webb for $3090. or of the collateral said to have been deposited therewith. To the deed of June 7th there was attached a schedule of assets, and among others appears the item, "1839, July 25, J. W. Webb, $3090. Recorded July 1, 1841," but no mention is made of the one hundred shares of stock of the defendant company.

As shown by the bill and exhibits filed therewith, Webb, on February 2, 1842, filed his petition in the District Court of the United States for the Southern District of New York, applying for the benefit of the Bankrupt law, and in his schedule of debts filed therewith appears the item, "To the Bank of the United States of Penn., the sum of $3090. with interest from the 25th day of July, 1839, to wit; my note dated the 23rd of May, 1839, for the sum of $3090., drawn to the order of Morris Robinson, of the City of New York, payable sixty days after date, and discounted by said bank on a deposit of one hundred shares of the stock of the George's Creek Coal & Iron Company." And later, on September 19th, of the same year, one James Iddings, of New York, filed a claim "In the matter of James Watson Webb, Bankrupt," to which is attached his affidavit in which it is stated that

Webb was indebted to "The Bank of the United States of New York in the sum of $3090. and interest from the 25th day. of July, 1839, on his note due that date. * * * *. That according to the best of his knowledge and belief no security or satisfaction whatsoever has been received at any time for said debt or any part thereof except the certificate for 100 shares of the George's Creek & Iron Company of doubtful value."

It is alleged by the bill and shown by the exhibits therewith filed that Richard Bayard and others, trustees of the Bank of the United States under the deeds of September 4th and 6th, 1841, by deed dated May 21, 1855, conveyed all the remaining assets in their hands to Samuel Jaudon and others, and that at such time there remained in the hands of the trustees of said bank under the deed of June 7, 1841, certain unadministered assets that were not required for the performance of the trusts, in as much as said trustees had paid to their *cestui que trusts* all moneys owing to them. These assets were claimed by Samuel Jaudon and others, trustees, and were paid over to them by the surviving trustees of June 7, 1841, after an auditor's account had been stated and filed in November, 1855. Attached to this auditor's report was a list of the assets of the bank at that time held by said trustees under the deed of June 7, 1841. In this list we find the following assets: "J. Watson Webb, $3090."

It is further alleged by the bill and shown by exhibits therewith filed that on December 31, 1866, more than eleven years after the execution of the last named deed, the said Samuel Jaudon and others, trustees, filed their petition in the Court of Common pleas of Philadelphia, in which they stated, in substance, that they had been offered by George Peabody, of London, $100,000.00 all the remaining assets of the United States Bank then in their hands, and that for the reasons stated therein they thought the amount offered was the full value of such assets and asked that they be allowed to accept the offer. By

an order of Court passed on the said 31st day of December, 1866, the prayer of the petition was granted and the trustees were authorized to accept said offer and make sale thereunder of the remaining assets in their hands.

To the petition above mentioned was annexed a schedule said to contain a "full statement of all the said assets yet remaining in the hands of your petitioners." In this schedule or list of assets there is no mention of either the note of James Watson Webb or of the collateral said to have been deposited therewith.

And by the deed also referred to, dated the 28th day of September, 1869, George Peabody assigned and conveyed unto the said George Peabody Russell, Robert Singleton Peabody and Charles W. Chandler, Trustees, all the remaining assets of the United States Bank at such time held by him, that were conveyed to him by deed from Samuel Jaudon and others, dated June 25, 1867.

There is also filed with the bill as an exhibit the written deposition of Leigh Bonsal subscribed and sworn to by him before a Notary Public on the 16th day of August, 1912. In this deposition Mr. Bonsal states that he had recently made an extensive examination of the deeds of assignment made by the Bank of the United States in 1841, and had also "examined the proceedings and records in the Court of Common Pleas of Philadelphia, which court had jurisdiction over all the three sets of trustees under the three assignments from the Bank of the United States," and has also "examined all of the seven trustees' reports and auditor's accounts filed by John Bacon and others, trustees, from the year 1841 to 1855, and in none of them was there any mention of any sale of the James Watson Webb note for $3090., or of the 100 shares of George's Creek Coal & Iron Company stock, which had been deposited as collateral for said note, and * * * * in none of the proceedings of the Bank of the United States at any time was there any mention of the collection or sale of the

said note of James Watson Webb, or any sale of the stock. * * * * And that he has examined all of the accounts item by item, in order to make sure of this. Instead of the note of James Watson Webb having been paid, the seventh and final account of John Bacon and others, trustees, in 1855 shows that the note was still in their hands and unpaid, all of which will appear in Exhibit No. 5 filed with the bill of complaint in this case."

In the bill it is averred that "there is no record at any time thereafter of any sale of the said one hundred shares of the George's Creek Coal & Iron Company stock which came into the hands of the trustees of the Bank of the United States as heretofore set forth, and that your orators, having shown that the stock was acquired by their predecessors, are entitled, in the absence of proof to the contrary, to said stock, in virtue of the presumption of the continuance of the ownership, when such ownership has once been shown, in as much as all the remaining assets of the Bank of the United States of all kinds were purchased by George Peabody at and for the sum of one hundred thousand dollars."

A demurrer filed to this bill was sustained by the Court below. It is from the order sustaining the demurrer and dismissing the bill that this appeal is taken.

In considering the sufficiency of the bill under the demurrer filed, the allegations of the bill should be considered in connection with the exhibits filed therewith as a basis of the allegations of the bill. The exhibits are filed with the bill that they may assist in the presentation of the object and purposes sought to be accomplished by the bill, and therefore the bill and such exhibits are to be read and construed together. *Gusdorff.* v. *Schleisner*, 85 Md. 360.

Assuming, although not deciding, that the original one hundred shares of the stock of the George's Creek Coal & Iron Company, issued to Morris Robinson, Agent, was the property of James Watson Webb at the time it was said to have been deposited with the Bank of the United

States as a collateral for the payment of said loan of $3090., is it shown by the bill and exhibits therewith filed that such stock was assigned and conveyed (as a part of the remaining assets of the bank) to George Peabody under the assignment or conveyance to him of June 25, 1867, by Samuel Jaudon and others, trustees?

This stock was deposited with the United States Bank merely as a collateral for the payment of an indebtedness. It is not shown by the bill or exhibits that the character of its ownership was ever changed, but it is contended for by the plaintiffs that by reason of the facts set forth in the bill, the indebtedness not having been paid, it should, after the lapse of the time therein mentioned, be regarded as having become the absolute property of the Bank.

For the purposes of this case, it is not necessary for us to pass upon this contention, but assuming that it did become the absolute property of the bank, did it remain the property of the bank, and was it conveyed to Peabody as contended for by the plaintiff under the deed to him from Samuel Jaudon and others, trustees?

It is contended for by the plaintiff that when it is once shown that it was the property of the bank, it is, in the absence of proof to the contrary, presumed to continue to be the property of the bank, and therefore it was, as they contend, the property of the bank, forming a part of its remaining assets, at the time of the conveyance to Peabody, and in support of this contention we are referred to the following cases and authorities: *Hammond* v. *Inloes,* 4 Md., 172; *Best on Presumption,* Chap. 6; *Bauernschmidt case,* 101 Md. 148; *Cyc.* Vol. 6, 1053; *Greenleaf on evidence,* Vol. 1, 138, Sec. 41 (16 Ed.); *Coleman* v. *Rice,* 105 Ga. 163; *Herries* v. *Wesley,* 13 Hun. 492; *Oller* v. *Bonebrake,* 65 Penn. State, 338; *Hanson* v. *Chiatovich,* 13 Nevada, 395, and others.

The principle of law that "It is a general presumption that things once proved to have existed in a particular state are understood as continuing in that state until the con-

trary be established by evidence either direct or presumptive," which was applied in the cases above cited, can not, in our opinion, be supplied to this case under the facts here presented. The facts of this case are inconsistent with such a presumption and differ widely from the facts in those cases.

As the bill alleges, the stock of the defendant company came into the possession of the United States Bank on May 23, 1839, (if not before) as a collateral for the loan of $3090. made to James Watson Webb. In the deed of assignment of the United States Bank to John Bacon and others, trustees, dated June 7, 1841, Webb's indebtedness appears in the list of assets attached to the deed, but no reference is therein made to the collateral said to have been deposited with it.

In the schedule of debts of Webb filed in 1842 in the bankruptcy proceedings, the aforesaid indebtedness to the bank is returned by him and reference is therein made to the stock deposited as a collateral. And again, in the affidavit of James Iddings, made on September 16, 1842, that we have already referred to, the said collateral is mentioned. This is the last reference, made more than seventy years ago, to the stock deposited as a collateral that is found in any of the exhibits. The indebtedness aforesaid is again referred to for the last time, more than fifty-seven years ago, in the auditor's report filed Nov. 16, 1855, when the remaining assets of the bank passed from the trustees under the deed of June 7, 1841, into the hands of Samuel Jaudon and others, trustees and representatives of the unpaid creditors of the United States Bank.

Samuel Jaudon and others, trustees, after taking over the remaining assets of the United States Bank in 1855, in execution of, and in obedience to the terms, of the trust imposed in them, collected and realized upon many of the assets assigned to them, as is shown by their petition subsequently filed on December 31, 1866, in which they ask permission to accept the offer of $100,000.00 made by George

Peabody for the purchase of the remaining assets then in their hands, although it is not shown by the bill and exhibits which of all the assets in their hands were disposed of or realized upon. In their petition they use this language; "That since the year 1855 your petitioners have from time to time proceeded to realize upon the said assets and to collect the same. That the same were of various kinds and description, and they annex hereto a schedule marked "A" which contains a *full statement of all of the said assets yet remaining in the hands of your petitioners.* That they have executed the trust committed to their hands with respect to the realizing upon the said assets as far as it is possible for them to do so."

Schedule "A" referred to, which the petition states contains "all of the assets yet remaining in the hands of said trustees," contains many items of property located in a number of the States of the Union, and among these items are found stocks of various kinds and other securities which seem to have had only a nominal value, and in a number of instances the value thereof given was less than the value of the one hundred shares of the George's Creek Coal & Iron Company stock, for at this time it will be recalled, this company was paying dividends upon its stock. Moreover, at the end of the list appears the following memorandum: "In addition to the foregoing there is the following supposed to be collateral securities for debts; 20 shares Franklin R. R. Co.'s stock, 20 shares Franklin Institute stock." But there is no mention whatever made of any stock of the George's Creek Coal & Iron Company held at such time by the Bank, either in its own name or as collateral security for a debt, although it appears that such schedule was made out with great particularity and that no property or assets of the company then held by them, however small in value, were omitted therefrom.

In view of the fact that it was the duty of the trustees to dispose of and realize upon the assets of the bank, and that they did realize upon its assets "as far as it was pos-

sible for them to do so," and that in the said schedule of assets, containing, as it is said, all the remaining assets in their hands at such time, the said one hundred shares of stock were not included, it can not be presumed that such stock was not disposed of or realized upon and continued to remain the property of the bank. The character of the trust and the duties of the trustees to be performed thereunder, and their statement of the performance of such duties, are inconsistent with such a presumption.

It is nowhere alleged by the plaintiffs that the trustees did not dispose of and realize upon the stock here involved, but on the contrary, the trustees in their schedule of all the remaining assets of the bank, do not include such stock, and we can not assume that because it was not transferred upon the books of the company it was not so disposed of or realized upon.

It may also be said that it is nowhere alleged by the plaintiff that George Peabody, after the purchase of the remaining assets of the bank, during the two years of his life thereafter, or the trustees, to whom he conveyed said assets of the bank, during the forty-three years thereafter, did not dispose of or realize upon said stock, if in fact it was so assigned to him.

The prayer of the bill asks that a mandatory injunction be issued directing or requiring the defendant company, (1st.) to issue a new certificate in lieu of certificate No. 616; (2nd.) to transfer certificate No. 3629 to them; and (3rd.) to pay over to them the accumulated dividends. To grant this prayer we must find that the stock here involved and the accumulated dividends are the property of the plaintiffs, and this fact in our opinion is not shown or established by the bill and exhibits therewith filed. Therefore the order or decree of the Court below will be affirmed.

Order or decree affirmed, as *per curiam* heretofore filed, with costs to the appellee.