The record in this case contains three appeals from an order of the Circuit Court for Baltimore City by which certain exceptions which had been filed to an auditor's account were overruled, and that account finally ratified and confirmed. One of these appeals was taken on behalf of the State of Maryland, another on behalf of the Mayor and City Council of Baltimore, and the third by William Force Scott, general assignee in bankruptcy, acting especially for James Watson Webb and for Tilley Allen, and Charles B. Peabody and Henry C. Little, substituted trustees under a deed of *Page 598 
trust from George Peabody. The last exceptions, in their amended form, are conditional and are only to be considered in the event of the contention in the first two appeals being sustained.
Motions have been made to dismiss the appeals of the State of Maryland, and of the Mayor and City Council of Baltimore and in our opinion these motions should be granted. The question involved in these two appeals are the same, but in view of the large amount of litigation to which the fund in this controversy has given rise, it seems proper to review, as concisely as may be, the facts out of which the litigation has arisen, and then consider the questions of law presented by the claim made on behalf of the City and State.
In 1838 there was issued by the George's Creek Coal and Iron Company a certificate for 100 shares of its stock in the name of "Morris Robinson, Agent," and in 1841 there was issued a certificate for 41 shares of the same stock in the name of "Telley Allen, in Trust." There was no entry whatever upon the books of the George's Creek Company to indicate for whom Morris Robinson was agent, or for whom Telly Allen was trustee, or the nature of the trust. Neither at the time of the issue of these certificates, nor for a long period thereafter, was the stock a paying one. No dividend of any description was declared or paid to the stockholders until the year 1864, and from that time on dividends were regularly declared and paid to the stockholders, once or twice in stock, but generally in cash. No one, however, appeared to claim any of the dividends declared upon the stock so standing in the names of "Robinson, Agent," or "Allen, in Trust." The certificates of the stock dividends and the cash of the cash dividends remained in the hands of the George's Creek Company up to the time of the dissolution of that company, and in the course of the forty-odd years which elapsed from the time when the declaration of dividends was begun, the aggreate of those dividends amounted to the very considerable sum for the two holdings of, approximately, $90,000. *Page 599 
In 1910 Malcolm V. Tyson filed a bill in the Circuit Court No. 2 of Baltimore City, as administrator of Robinson, deceased, the purpose of which was to have delivered and paid over to him the stock, and accumulated dividends upon the stock standing in the name of "Morris Robinson, Agent." The decision in that case is reported in 115 Md. 564, where this Court held that as Tyson was suing in the representative capacity of an administrator, he could recover only such property as had belonged to Robinson individually, and that the addition of the word "agent," as it appeared on the stub of the certificate, indicated that the stock and dividends for which his bill was filed, was not the property of Robinson personally, and, therefore, that his personal representative was not entitled to have delivered to him any stock or other property which Robinson may have held in a fiduciary capacity, such as an agent.
The next step in the litigation was the case of the BaltimoreTrust Co. v. The George's Creek Coal and Iron Co., 119 Md. 21. That suit was brought by the Baltimore Trust Company as receiver, for the Tilley Allen stock, and in that case the pleadings alleged the belief of the plaintiff that no trust ever existed in respect to said stock, but that the same belonged to him individually. The receiver had been appointed without notice to the George's Creek Company, and in that case it was held, first, that the pleadings did not disclose any sufficient reason for the appointment of a receiver without notice to the George's Creek Company; and, second, that the plaintiff had not shown any such legal or equitable interest in the subject-matter of the petition as to warrant it in asking for the appointment of a receiver.
The third suit was a bill filed by certain stockholders of the George's Creek Company asking that the Circuit Court of Baltimore City assume jurisdiction over the dissolution of that company, steps looking to that end having been previously taken by the corporation without judicial proceedings, and asking, further, that receivers might be appointed to take charge of and distribute the assets of the corporation, *Page 600 
and wind up its affairs. In that bill it was alleged that it wasprobable that the stock standing in the name of "Robinson, Agent," was held by him as an agent of the corporation and it asked that the value of that stock and the dividends accumulated thereon should be divided among the remaining stockholders in proportion to their respective holdings; and with regard to the Allen stock it was alleged, that if the proceedings instituted by the Baltimore Trust Co. were successful, the George's Creek Co. would be divested of the possession of said accumulated fund, although the lawful ownership of the same might remain unestablished, to the injury of the plaintiffs and other stockholders in the George's Creek Co. In this case a decree was entered on the 26th of January, 1914, dissolving the George's Creek Company, and appointing John S. Gittings, the present appellee, receiver.
A further attempt to secure the stock and accumulated dividends in the "Robinson, Agent," branch of this case was made in a bill filed in Circuit Court No. 2 of Baltimore City, by Charles B. Peabody, et al., Trustees, against the George's Creek Coal and Iron Co., reported in 120 Md. 659. This case was brought upon the theory that the stock in question was the property of James Watson Webb, that said Webb was indebted to the Bank of the United States in the sum of $3,090 upon his note dated May 23, 1839, and that the stock which stood in the name of "Robinson, Agent," had been delivered as collateral security for this note at the time of its negotiation with the Bank of the United States, and that it passed to the trustees of that bank under the deed of June 7th, 1841, was uncollected by them and passed by their deed of May 21st, 1855, to Samuel Jaudon and others, the stock being a part of the unadministered assets of the bank. That subsequently on December 31, 1866, all of the then unadministered assets of the Bank of the United States were disposed of by Jaudon and others, trustees, to George Peabody, and that on September 28th, 1869, George Peabody transferred to George Peabody Russell and others, as trustees, all of the remaining assets of the United States Bank *Page 601 
then held by him. In the auditor's account filed in 1855 was contained a list of assets then in the hands of Jaudon and others, as trustees. In that list of assets appears the entry, "J. Watson Webb, $3,090," but without mention of the collateral, and to the petition for the order under which Jaudon and others made their sale to Peabody, was appended a schedule which was said to contain a "full statement of all of the said assets yet remaining in the hands of your petitioners," but in this schedule neither the note of James Watson Webb, or of any collateral deposited with it, appeared.
In the case of Peabody against the George's Creek Co.,120 Md. 659, this Court held that the evidence adduced, failed to show sufficiently that the 100 shares of George's Creek stock had passed to George Peabody in December, 1866, and, therefore, the plaintiffs in that action failed to recover the stock and dividends which had been declared on it.
The case of Scott against the George's Creek Co. was instituted in the United States District Court for Maryland; see 202 Fed. 251, and the purpose of that suit was to recover the Tilley Allen stock, upon the theory that Allen had been adjudicated a bankrupt by the United States District Court of the Southern District of New York in 1842, and that Scott as official or general assignee in bankruptcy was entitled to any of the property of the bankrupt not theretofore reduced to possession by a bankrupt assignee; it further raised the question of the bonafides of the trust, claiming substantially that there was no trust in fact, but that such designation was for the purpose of concealing the property from Allen's creditors, and that it in reality belonged to Allen individually. Mr. Scott, likewise in his capacity of official and general assignee in bankruptcy, claimed an interest in the "Morris Robinson, Agent," stock, upon the theory that such stock had been the property of James Watson Webb, that Webb was also a bankrupt, and that Scott as official assignee in bankruptcy was entitled to the Webb stock, or at least so much of that stock and its accumulations as might remain after *Page 602 
the satisfaction by payment to the Peabody trustees of the note of Webb for $3,090, and interest thereon. In the United States District Court the proceeding was not dismissed, but was held in abeyance to await the determination of the pending case instituted by Montell and others, the Federal Court holding that there existed a concurrent jurisdiction in the State and Federal Courts, that the proceeding was in the nature of a proceeding inrem, with the fund as the res, that the jurisdiction of the State Court having first attached, the proceedings in the Federal Court would be stayed to afford an opportunity for action by the Courts of this State.
The case of Montell and others against the George's Creek Co. was then proceeded with, and culminated, under an order of the Circuit Court of Baltimore City, in an auditor's account by which the funds belonging to the stockholdings of "Robinson, Agent," and "Allen, in Trust" (and which was then in the hands of Gittings, the receiver appointed by that Court) was finally distributed and disposed of. This account was filed on July 17th, 1914, and on July 25th, 1914, the State of Maryland intervened by petition and exceptions to the account. In the petition it avers that the State was entitled to the entire amount of both funds under section 135 of Article 93 of the Code, avering that the true owners of the stock long since died, and that no widow, surviving husband or relations within the fifth degree counting down from the common ancestor has come forward to claim any part of the said funds. On October 17th, 1914, the City of Baltimore intervened by exceptions and petition, alleging that it was entitled to both funds, under the same section of the Code as that upon which the State based its claim, and further under the provisions of the City Charter, sections 808-812. The exceptions of the State and City being overruled, the present appeals were taken.
The claims asserted to these funds by the State and by the City of Baltimore can appropriately be considered together, since they are both based upon the same provisions of the Code, the effect of which is, that if those claims are valid, the *Page 603 
title to the property now in dispute vests in the State, and the property belongs to the State, to be "paid to the Board of School Commissioners of the county wherein letters of administration shall be granted upon the estate of the deceased for the use of the public schools of said county;" and in the case of the City of Baltimore, the title being vested in the State, is to be paid to the Board of School Commissioners of said city.
The initial difficulty with the claim now presented on behalf of the State and City of Baltimore lies in the fact that neither Morris Robinson or Tilley Allen were residents of this State at the time of their death, but both were domiciled in New York, and in the existing lack of proof as to who was the principal of Robinson, or who was or were the cestui que trustent of Allen, it is impossible to say to the school commissioners of what county or the City of Baltimore the money should be paid, and the statute makes no other disposition of such a fund.
A further difficulty is presented by the fact that Tilley Allen, if he had any right to or interest in the stock personally, left a will, while the statute relates to cases of intestacy only. With regard to Robinson, administration was granted on his estate in 1909 by the Orphans' Court of Baltimore City, and the section of the Code directs the payment of moneys, where the intestate left "no widow or relations of the intestate within the fifth degree" to the Board of School Commissioners of the county wherein letters of administration shall be granted. But this section becomes operative only upon the assumption that the stock in question was the individual property of Robinson, and in Tyson, Adm., v. George's Creek C. I. Co.,115 Md. 564, this Court held that the property in the stock was not his, individually. But even if these difficulties could be overcome there are other and serious obstacles to the establishment of the right of the State and City to the funds.
The motion to dismiss involves a consideration of the nature and extent of the interest of the State and the city *Page 604 
in the subject matter with which the present litigation has to deal, for it has been settled by a long line of adjudications in this State, that where a party to a suit has no interest in the subject matter of it, he has no standing in the Court with respect to the disposition of the property involved in the particular case. Wagner v. Freeny, 123 Md. 24, and cases there cited. The claim of the city and State, if valid at all, must derive that validity under the provisions of the Code, sec. 135 of Art. 93, which provides for the devolution of the property of an intestate, and the vesting of the title to it in the State in the event of his dying, leaving no widow or relations within the fifth degree, counting down from the common ancestor. No right can arise upon the theory that the property belonged to Morris Robinson or Tilly Allen individually, and that they died intestate without leaving relatives within the required relationship. That necessarily follows from the decisions of this Court in the case of Tyson v. George's Creek Co.,115 Md. 564, in which it was distinctly held that these funds had not been shown to belong to the persons named, in an individual capacity, but were held by them respectively in a representative or fiduciary capacity. Who was or were the principal and thecestui que trustent in the two cases has not thus far been established by the evidence; nor has the evidence sustained the allegation that the Allen stock was issued to "Allen, in trust" for the purpose of defrauding his creditors. Therefore, the parties in interest were the principals of Robinson, and thecestui que trustent of Allen. There being no direct evidence as to who the principal or cestui que trustent were, there is of course no evidence as to whether they died intestate or testate, and while from the long lapse of time their death may be presumed, there is no presumption in law that a party has died without issue, Sprigg v. Moale, 28 Md. 497, 506; Chew v.Tome, 93 Md. 244, 252. And since the dying without issue is a matter for proof in a case like the present, no right can arise based upon an alleged death, without issue, unsupported by proof of the allegation. *Page 605 
In this connection reliance is placed by the State and city upon the case of Guyer v. Smith, 22 Md. 239. That was a suit in ejectment, instituted at a time when under the law of this State, an alien was not permitted to hold real estate, and the law as laid down in that case was to the effect, that since an alien holding of real estate was in contravention of the statute, where title passed to one who was an alien he held it "not for his own benefit but for the benefit of the State and subject to be divested by the State upon an inquest of office found." There is of course a radical difference between property attempted to be held by one who is without the legal capacity to hold, and property belonging to those who are not laboring under such incapacity, though up to the present time they may have made no claim therefor. In the case of Guyer v. Smith, supra, it is further said that "the escheat of lands without office found, prevailed during the latter part of the period of the proprietary government in this State, and the practice of an inquisition of office found, having fallen into disuse was not afterwards resumed," therefore, it is no longer an essential that there should be an inquisition in this form. The distinction betweenGuyer v. Smith and the present case is so marked that that decision cannot be regarded as any authority to sustain the position of the city and State in the present litigation.
The case of Matthews v. Ward, 10 G. J. 443, was decided by JUDGE ARCHER in 1839, and in that case the property was held to have escheated to the State, because its former owner had diedwithout heirs or kin, and for the reason, as stated in Casey
v. Inloes, 1 Gill, 506, that the State was ultimus haeres and takes the property for the benefit of all. These cases differed, however, from the one under consideration, in that it was apparently established that the former owner of the property had died "without heirs or kin," a condition which is not presented by the record in this case. In this connection it is to be observed that there has been no proceeding instituted by either State or city looking to the forfeiture to the State of the property in this case, although *Page 606 
such is apparently the ordinary mode of proceedure. AmericanLoan Trust Co. v. Grand Rivers Co., 159 Fed. 775; Hamilton
v. Brown, 161 U.S. 256; Am. Land Co. v. Zeiss, 219 U.S. 62.
But if it be assumed that the intervention of the State and city in the present case be regarded as a sufficient judicial proceeding, under the decisions of the Supreme Court of the United States referred to, the question still remains, whether the State by an application of the doctrine parens patriae can lay a valid claim to the fund now in question, and in the consideration of this it will be well also to consider what the effect was of the decree by which the corporation was dissolved. In the able briefs filed by the city and State, special reliance was placed upon the cases of the Severn Wye Railway Co., 1 L.R. Ch. Div. (1896) 559; Coulter v. Robertson, 24 Miss. 278
and Fox v. Horah, 36 N.C. 358. The first of these cases deals primarily with the question whether or not, where a corporation declares a dividend, it becomes a trustee for the stockholders as to such dividend, and holds that it does not, and that limitations will run as against the stockholder from the declaration of the dividend. The rule adopted in that case, certainly so far as the question of limitations is concerned, is not that which has been followed in this country. Here the rule is that there must be a demand by the stockholder for the dividend, and that limitations will run only from the time of the demand made. In dealing with the dissolution of a corporation it is held that at the common law upon the dissolution, its real estate reverts to the original owners or their heirs, and that its personal property vests in the state or sovereign, and all debts due to it and from it were extinguished by operation of law. This rule of the common law was adopted in Indiana in the case of the State Bank v. The State, 1 Blackf. 267; 12 Am. Dec. 234; but that case was subsequently overruled by the case of the State v. Bailey, 16 Ind. 46, upon the authority ofBacon v. Robertson, 18 How. 480. In the case of Coulter v.Robertson, supra, the same common law doctrine was recognized *Page 607 
and applied in the State of Mississippi; but in the case of Bankof Miss. v. Duncan, 56 Miss. 173, CAMPBELL, Justice, in delivering the opinion of the Supreme Court of that State, said: "The injustice of the common law rule and its hostility to the more enlightened spirit of the age were urged upon the High Court of Errors and Appeals by counsel, who insisted that it was condemned by reason and the principles of modern and enlightened jurisprudence; but the firm answer of the Court was, that, except as modified by statute, the common law on this subject was in full force and operation in this State. We have no hesitation to declare our full concurrence with the views of counsel on this point and our dissent from the view of the High Court of Errors and Appeals announced in the case of Coulter v. Robertson."
The Supreme Court of North Carolina held in Fox v. Horrah,supra, that the English common law doctrine before stated, was in force in that State, and that decision was approved inMalloy v. Mallett, 6 Jones Eq. 345. But the force of these decisions as an authority for the doctrine, was completely nullified in the case of Von Glahn v. DeRosset, 81 N.C. 467, which while it did not in terms overrule the prior decisions, held that those cases had been decided by the application of strict legal principles, but that the harshness of the doctrine would be entirely overcome by the application of equitable principles, which were applied in the case then before the Court.
The Supreme Court of the United States has never recognized the existence in this country of any such rule of law as that claimed to have been the rule of the English common law in reference to the property of a dissolved corporation; on the contrary that tribunal uniformly held that the property of such a corporation constituted a trust fund for the payment of its creditors and for distribution among the stockholders. Greenwood v. FreightCo., 105 U.S. 13, in which case there had been a repeal of the Charter of the company, the Court said: "The rights of shareholders of such a corporation to their interests in the property are not *Page 608 
annihilated by such repeal and there must remain in the courts the power to protect these rights." To the same effect are many other decisions: Curran v. Arkansas, 15 How. 304; Terrett
v. Taylor, 9 Cranch. 43, 52; Mumma v. Potomac Co., 8 Pet. 281; Curry v. Woodward, 53 Ala. 371; Howe v. Robinson,20 Fla. 352; Robinson v. Lane, 19 Ga. 337; Mining Co. v.Mining Co., 116 Ill. 170; Nat. Trust Co. v. Miller, 33 N.J. Eq. 155;Heath v. Barmore, 50 N.Y. 302; Moore v.Schoppert, 22 W. Va. 282.
In Lauman v. Lebanon Valley R.R. Co., 30 Pa. St. 42, it is said: "The dissolution works a change in the form of the interests of its members, by destroying the stock and substituting the thing which the stock represented, that is, a legal interest in the property, and leaves the members to such a division of this." This property no law can take from its owners and transfer to another without compensation, nor appropriate to the use of the State without due process of law. This entire subject is fully and carefully considered in the case of thePeople v. O'Brien, 111 N.Y. 1; 7 Am. St. Rep. 684, and full note thereto appended.
The case of the American Loan and Trust Co. v. Grand RiversCo., 159 Fed. 775, presents many points of similarity to the case under consideration. There certain property had been sold under a foreclosure of mortgage, and a distribution ordered and made of the proceeds of the sale, among the bond holders rateably. Some of the amounts audited for distribution lay unclaimed for more than ten years, when the question arose as to the proper distribution of the funds unclaimed, and among the claims to it presented and was on behalf of the United States, as property without an owner; but it was held properly distributable among the remaining bond holders who had not been paid in full, otherwise to the general creditors, otherwise to the stockholders.
From the consideration of the authorities, it inevitably follows that no title or interest in the property of the George's Creek Coal and Iron Company could pass to the State of Maryland or the City of Baltimore, either under the statute *Page 609 
or as the result of the decree dissolving the corporation. Nor can there be a claim as parens patriae in the absence of satisfactory evidence that the line of the last owner has become extinct within the fifth degree. The doctrine adopted in this State was clearly declared in Rockhill College v. Jones,47 Md. 17, where it said: "That the State has any original prerogative right to appropriate the fund to its own use in the absence of statutory rule of distribution is a proposition that can not be maintained. In England, even in the ancient period of her jurisprudence, when power was arbitrary and the rights of the subject but ill defined, such prerogative was not claimed." The statute in this State has definitely fixed the point at which the title to property shall be held to pass to the State, and the requisites to enable the State to assert its rights not having been met, it necessarily follows that a sufficient interest of the State and City has not been shown, in the subject-matter of this litigation, to entitle it to maintain its claim.
The appeal of the City and State will accordingly be dismissed, and since the appeal of Scott, assignee in bankruptcy, was conditional upon the establishment of at least a participation by the City and State in the funds now involved, that appeal will also be dismissed.
Appeals in Nos. 36, 37 and 38 dismissed, the costs to be paidout of the funds in the hands of the receiver. *Page 610